Steven Lawrence EVANS, Marc W. A. Lee and Ronald J. Troyer, Individually and on behalf of the Holy Spirit Association for the Unification of World Christianity, Plaintiffs,

v.

Thomas J. FULLARD, Mayor, Thomas Hanna, Police Chief, Joann Winters, City Clerk, and the City of McKeesport, Defendants.

Civ. A. No. 77–1338.

United States District Court, W. D. Pennsylvania.

Jan. 19, 1978.

S. Asher Winikoff, Pittsburgh, Pa., for plaintiffs.

Mord C. Taylor, McKeesport, Pa., for defendants.

OPINION

SNYDER, District Judge.

Various members of the Holy Spirit Association for the Unification of World Christianity (hereinafter "Unification Church") brought this action, on their own behalf and

on behalf of the Church and its members, for injunctive relief against the City of McKeesport, Allegheny County, Pennsylvania, and against its Police Chief and City Clerk, from the enforcement of a licensing ordinance. Several members had unsuccessfully attempted to obtain exemption from the City "to carry out their Church mission, including the solicitation of funds within the City". On November 28, 1977, after notice and hearing thereon, this Court issued a Temporary Restraining Order against enforcement of Ordinance No. 2517 "providing for the Regulation and Licensing of Transient Wholesale and Retail Businesses", adopted March 23, 1972, but limited solicitors to ten Church members at any one time, as agreed to by the Plaintiffs. A final hearing was held on January 5, 1978, at which it was developed that the City was not applying Ordinance No. 2517 but, rather, Ordinance No. 1833, adopted December 8, 1948, "Defining, Regulating and Licensing Solicitors and Canvassers" (attached as Exhibit A hereto). Plaintiffs then requested an injunction issue against enforcement of Ordinance No. 1833 which will be granted, as we find the Ordinance to be inapplicable to the activities of the Church members.

## I.

Under Ordinance No. 1833, it is unlawful for "any solicitor or canvasser" to engage in business without first obtaining a permit and license. A canvasser or solicitor is defined as "any individual, whether a resident of the City of McKeesport, or not, traveling either by foot, wagon, automobile, motor truck, or any other type of conveyance, from place to place, from house to house, or from street to street, taking or attempting to take orders for sale of goods, wares and merchandise, personal property of any nature whatsoever for future delivery, or for services to be furnished or performed in the future, whether or not such individual has, carries, or exposes for sale a sample of the subject for such sale or whether he is collecting advance payments on such sales or not". The Ordinance requires sworn applications containing detailed information as to, *inter alia*, the description of goods to be sold. The Police Chief is to make an investigation of the applicant's moral character and his employer's business character "as he deems necessary for the protection of the public good." No license can issue without the Chief's approval and it must show a photograph of the licensee, the class of license issued, the kind of goods to be sold thereunder, and an identifying description of any vehicle to be used in the soliciting or canvassing. There is a license fee of $5 per day, $20 per week, $50 per month, or $100 per year; each helper or assistant has to pay one-half of those fees and procure a permit or license. Every non-resident is required to post a surety bond in the amount of $1,000 as part of the licensing process, conditioned on compliance with the ordinances of the City of McKeesport and the statutes of the Commonwealth of Pennsylvania. A license can be revoked by the Mayor for fraud, misrepresentation, false statements, violations of the ordinance, or conviction of any crime or misdemeanor involving moral turpitude. There is a right of appeal to the City Council from a denial of a permit or license, and the decision and order of the Council is final and conclusive.

By agreement of counsel, an amended complaint was then filed adding Ordinance No. 1833, which was relied upon by the Defendants in their answer, and Plaintiffs reiterated that the application of the Ordinance to them failed to meet the procedural safeguard respecting licensing contained in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), asserting that the Ordinance "attempts to tax by a daily fee the exercise of the plaintiffs freedom of religion and other First Amendment rights and is unconstitutionally vague."

During the two years prior to our first hearing, representatives of the Unification Church had made numerous unsuccessful attempts to register with the police for the purpose of collecting donations in the City of McKeesport. In mid-August of 1976, when Church representatives were pressing Police Chief Hanna for permission, he re-

sponded with derogatory comments directed at the founder of the Unification Church and refused them a permit.

On September 7, 1976, seven Church members planned a campaign of solicitation of funds in the business area of McKeesport and by early afternoon police officers had arrested all seven of them, although some were still in the travelling van; only Ronald Troyer and Susan Palencia had begun soliciting at that time. On September 15, 1976, the charges were dismissed against the five non-solicitors but were upheld against Troyer and Palencia. The Church was then in the midst of preparations for a mass religious rally scheduled to be held in Washington, D.C. on September 18, 1977. The fines in the McKeesport matter were paid and no appeal was taken.

On March 10, 1977, Ronald Troyer contacted the McKeesport City Solicitor in order to obtain a permit and was referred to Police Chief Hanna who stated he would not grant the permit, and indicated he would have to be taken to court in order to force a change in his position. After further meeting, Chief Hanna did change his position somewhat to grant permission for solicitation in the business center of McKeesport, but stated that no door-to-door solicitation would be allowed in residential areas. It is the contention of the Plaintiffs however that the "very nature of an educational/witnessing campaign necessitates meeting residents in their own homes. Members of my church have refrained from the residential visitations for fear of arrest and prosecution and also for jeopardizing an already unstable permit."

## II.

■ At first acquaintance with this action, it appeared to the Court that it would be required to interpret and apply the First Amendment's forbidding of any law respecting the establishment of a religion or prohibiting the free exercise thereof.[1] This prohibition applies not only to Congress but also to the states through the Fourteenth Amendment. *Abington School District v. Schempp*, 374 U.S. 203, 215–216, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) and cases cited therein. *Schempp* held that a state may not require reading from the Bible and recitation of The Lord's Prayer in public schools. In this context, courts are sometimes required to define just what the word "religion" means. We recall that courts have construed "religion" to mean "one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will", *Davis v. Beason*, 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637 (1890), quoted so frequently with approval. Also instructive is the statement by Mr. Chief Justice Hughes in his dissent in *United States v. Macintosh*, 283 U.S. 605, 633–634, 51 S.Ct. 570, 578, 75 L.Ed. 1302 (1931) (with Justices Holmes, Stone and Brandeis concurring):

> "The essence of religion is belief in a relation to God involving duties superior to those arising from any human relation.
> . . . One cannot speak of religious liberty, with proper appreciation of its essential and historic significance, without assuming the existence of a belief and supreme allegiance to the will of God."

In recent years, however, the Supreme Court has tended to define religion in broader terms, rather than with reference only to traditional, theistic understandings of that term. *See: Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

■ As the testimony developed, however, we quickly found that we would not be required to determine exemption by reason of the First Amendment. Instead, the

---

1. A California court was called upon to reverse the conviction of a Navaho Indian for the consumption of peyote, which was required as part of the "religious ritual". *People v. Woody*, 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964). But a spiritualist fortune teller was convicted under a statute prohibiting snake handling, even though she claimed to be exercising a "religious ritual", because of the overriding state interest in public safety. *McMasters v. State*, 21 Okl.Cr. 318, 207 P. 566 (1922).

testimony was uncontradicted that the solicitors for the Unification Church were soliciting financial support from residents of McKeesport and were not "taking or attempting to take orders for the sale of goods, wares and merchandise, personal property of any nature whatsoever for future delivery, or for services to be furnished or performed in the future". While the solicitors did have flowers and candy with them on occasion, the evidence was that these items were not sold but were given to those who made contributions. No price was stated for the items of personal property, nor was there any set amount of donation solicited in exchange for either a specific amount of product or identified personal property.[2]

Much testimony was offered by the Plaintiffs on the reliance placed by the Church members on the Old and New Testaments, as interpreted in "Divine Principle" by Dr. Sun Myung Moon covering such subjects as the Principles of Creation, the Fall of Man, the Advent of the Messiah, the Resurrection, the Preparation for the Second Advent. We heard of the importance of home solicitation in the furtherance of this World Movement.

There was testimony that some of the solicitors had been readily accepted in the City of McKeesport and that after the Temporary Restraining Order had been granted, no complaints were made to City officials on the activities of the Church members. There was, however, no testimony offered to support any contention that members of the Church were, in fact, involved in the sale of personal property. Nor did the City Solicitor, at this point, contend that Ordinance No. 1833 could be properly applied to the actions of the Plaintiffs in this case,

although no offer was made to permit the requested solicitation. It is clear, therefore, that application of this ordinance to Plaintiffs' activities would deprive them of due process, and the injunction as applied for by the Plaintiffs must, under the evidence developed in the case, issue.

We do not intend that the injunction we are here issuing shall in any way indicate that, although beliefs with respect to religion are free from restraint, actions are not subject to control. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed.2d 1292 (1943); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). *Also see*, the excellent opinion of Judge Hubert Teitelbaum of this Court in *Intern. Soc. for Krishna Consciousness of W. Penna., Inc. v. Griffin*, 437 F.Supp. 666 (1977).

A statute or ordinance which operates as a prior restraint on the exercise of First Amendment freedoms must have narrow, objective and definite standards to guide the licensing authority. *Cantwell, supra; Shuttlesworth, supra.* In this case, we do not meet the freedom of religion issue since the ordinance attacked does not apply and cannot be construed to apply to the distribution of religious tracts or the solicitation of donations within the City.[3]

We find there is a justiciable controversy and that the Plaintiffs are suffering irreparable injury, and are threatened with irreparable harm in the future, by reason of the acts complained of which are causing a substantial loss or impairment of freedom of movement and which will continue to occur so long as the Defendants' conduct continues. The Plaintiffs have no plain, adequate

---

**2.** Under the Uniform Commercial Code, as adopted in Pennsylvania, 12 A. Purdons Stat. 2–106, there appears the definition: "A 'sale' consists in the passing of title from the seller to the buyer for a price".

In the Pennsylvania Cigarette Tax Act of 1957, 72 P.S. 3168.102, a sale means "any transfer of ownership, custody or possession of cigarettes for consideration". And in the Pennsylvania Securities Act, 70 P.S. 32, "(t)he terms

'sale' and 'sell' include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value".

**3.** Nor do we reach the issue of defectiveness claimed to exist because of the vast discretion of officials to grant or deny licenses without definite and objective standards. *See Freedman v. Maryland, supra*, and its progeny.

or complete remedy at law to redress the wrongs complained of and injunction alone will give them substantial relief and prevent further irreparable injury, damage and inconvenience. This Court's jurisdiction for declaratory and injunctive relief is clearly proper under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2.

The following shall constitute the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52, and an appropriate order shall be entered.

## APPENDIX

### Exhibit "A"

### City Council of the City of McKeesport
### PENNSYLVANIA

### FORTY–EIGHTH COUNCIL

Series 1948                                    **Bill No. 1833**

Presented by the Honorable Charles A. Kinkaid,
Director of Public Affairs

Prepared by Harry H. Meizlik, City Solicitor

Given Two Readings on the 19th day of November 1948, and placed on Calendar

Given Final Reading and Adopted on the 8th day of December, 1948, and Ordered Advertised and Printed

## AN ORDINANCE

**DEFINING, REGULATING AND LICENSING SOLICITORS AND CANVASSERS IN THE CITY OF McKEESPORT, AND PROVIDING PENALTIES FOR THE VIOLATION THEREOF**

BE IT ORDAINED AND ENACTED BY THE CITY OF McKEESPORT IN COUNCIL ASSEMBLED, AND IT IS HEREBY ORDAINED AND ENACTED BY THE AUTHORITY OF THE SAME:

SECTION 1. PERMIT AND LICENSE REQUIRED. It shall be unlawful for any solicitor or canvasser as defined in Section 2 of this Ordinance to engage in such business within the corporate limits of the City of McKeesport without first obtaining a permit and license therefor in compliance with the provisions of this ordinance.

SECTION 2. DEFINITION. A canvasser or solicitor is defined as any individual, whether resident of the City of McKeesport, or not, traveling either by foot, wagon, automobile, motor truck, or any other type of conveyance, from place to place, from house to house, or from street to street, taking or attempting to take orders for sale of goods, wares and merchandise, personal property of any nature whatsoever for future delivery, or for services to be furnished or performed in the future, whether or not such individual has, carries or exposes for sale a sample of the subject for such sale or whether he is collecting advance payments on such sales or not, provided that such definition shall include any person who, for himself, or for another

person, firm or corporation, hires, leases, uses, or occupies any building, structure, tent, railroad box car, hotel room, lodging house, apartment, shop, or any other place within the City for the sole purpose of exhibiting samples and taking orders for future delivery.

SECTION 3. APPLICATION. Applicants for permit and license under this ordinance must file with the Mayor a sworn application in writing (in duplicate) on a form to be furnished by the Mayor, which shall give the following information:

(a) Name and description of the applicant;

(b) Permanent home address and full local address of the applicant;

(c) A brief description of the nature of the business and the goods to be sold;

(d) If employed, the name and address of the employer, together with credentials establishing the exact relationship;

(e) The length of time for which the right to do business is desired;

(f) The place where the goods or property proposed to be sold, or orders taken for the sale thereof, are manufactured or produced, where such goods or products are located at the time said application is filed, and the proposed method of delivery;

(g) A photograph of the applicant, taken within 60 days immediately prior to the date of the filing of the application, which picture shall be 2″ x 2″ showing the head and shoulders of the applicant in a clear and distinguishing manner.

(h) A statement as to whether or not the applicant has been convicted of any crime, misdemeanor, or violation of any municipal ordinance, the nature of the offense and punishment or penalty assessed therefor.

At the time of filing the application, a fee of $5.00 shall be paid to the Mayor to cover the cost of investigation of the facts stated therein.

SECTION 4. INVESTIGATION AND ISSUANCE. (a) Upon receipt of such application, the original shall be referred to the Chief of Police, who shall cause such investigation of the applicant's moral character, and his employer's business character, to be made as he deems necessary for the protection of the public good.

(b) If as a result of such investigation, the applicant's character or his employer's business character is found to be unsatisfactory, the Chief of Police shall endorse on such application his disapproval and his reason for the same, and return the said application to the Mayor who shall notify the applicant that his application is disapproved and that no permit and license will be issued.

(c) If as a result of such investigation, the character of the applicant and his employer's business character are found to be satisfactory, the Chief of Police shall endorse on the application his approval, execute a permit addressed to the applicant for the carrying on of the business applied for and return said permit, along with the application to the Mayor, who shall, upon payment of the prescribed license fee deliver to the applicant his permit and issue a license. Such license shall contain the signature and seal of the issuing officer and shall show the name, address, and photograph of said licensee, the class of license issued and the kind of goods to be sold

thereunder, the amount of the fee paid, the date of issuance and the length of time the same shall be operative, as well as the license number and other identifying description of any vehicle used in such soliciting or canvassing. The Mayor shall keep a permanent record of all licenses issued.

SECTION 5. FEES. (a) The license fee which shall be charged by the Mayor for such license shall be $5.00 per day, $20.00 per week, $50.00 per month, $100.00 per year. For each helper or assistant $2.50 per day, $10.00 per week, $25.00 per month, $50.00 per year. Each helper or assistant must procure the permit and license as herein provided for solicitors and canvassers.

(b) No fees shall be required for one selling products of the farm or orchard for future delivery actually produced by the seller, or from a veteran of any war who shall have a license issued to him from a Court of Record permitting him to solicit and canvass in Allegheny County.

(c) The annual fees herein provided shall be assessed on a calendar year basis and on or after July first the amount of such fee for annual license shall be one-half the amount stipulated above for the remainder of the year.

SECTION 6. BOND. Every applicant, not a resident of the City of McKeesport, or who being a resident thereof, represents a firm whose principal place of business is located outside the State of Pennsylvania, shall file with the Mayor a surety bond, running to the City in the amount of $1,000, with surety acceptable to and approved by the Mayor, conditioned that the said applicant shall comply fully with all the provisions of the ordinances of the City of McKeesport and the statutes of the State of Pennsylvania regulating and concerning the business of solicitor and guaranteeing to any citizen of the City of McKeesport that all money paid as a down payment will be accounted for and applied according to the representations of the solicitor and further guaranteeing to any citizen of the City of McKeesport doing business with said solicitor, that the property purchased will be delivered according to the representations of said solicitor. Action on such bond may be brought in the name of the City of to the use or benefit of the aggrieved person.

SECTION 7. EXHIBITION OF LICENSE. Solicitors and Canvassers are required to exhibit their licenses at the request of any citizen.

SECTION 8. DUTY OF POLICE TO ENFORCE. It shall be the duty of any police officer of the City to require any person seen soliciting or canvassing, and who is not known by such officer to be duly licensed, to produce his solicitor's or canvasser's license and to enforce the provisions of this ordinance against any person found to be violating the same.

SECTION 9. REVOCATION OF LICENSE. (a) Permits and licenses issued under the provisions of this ordinance may be revoked by the Mayor of the City after notice and hearing, for any of the following reasons:

(1) Fraud, misrepresentation or false statement contained in the application for license;

(2) Fraud, misrepresentation or false statement made in the course of carrying on his business as solicitor or as canvasser;

(3) Any violation of this ordinance;

(4) Conviction of any crime or misdemeanor involving moral turpitude, or

(5) Conducting the business or soliciting, or of canvassing, in any unlawful manner or in such a manner as to constitute a breach of the peace or to constitute a menace to the health, safety, or general welfare of the public.

(b) Notice of the hearing for revocation of a license shall be given in writing, setting forth specifically the grounds of complaint and the time and place of hearing. Such notice shall be mailed, postage prepaid, to the licensee at his last known address at least five (5) days prior to the date set for hearing.

SECTION 10. Appeal. Any person aggrieved by the action of the Chief of Police or Mayor in the denial of a permit or license as provided in Section 4 of this ordinance, or the action of the Mayor in the assessing of the fee as provided in Section 5(c) of this ordinance shall have the right of appeal to the City Council. Such appeal shall be taken by filing with the Council, within fourteen (14) days after notice of the action complained of has been mailed to such person's last known address, a written statement setting forth fully the grounds for the appeal. The Council shall set a time and place for a hearing on such appeal and notice of such hearing shall be given to the appellant in the same manner as provided in Section 9 of this ordinance for notice of hearing on revocation. The decision and order of the Council on such appeal shall be final and conclusive.

SECTION 11. EXPIRATION OF LICENSE. All annual licenses issued under the provisions of this ordinance shall expire on the 31st day of December in the year when issued. Other than annual licenses shall expire on the date specified in the license.

SECTION 12. PENALTY. Any person violating any of the provisions of this ordinance shall, upon conviction thereof be punished by a fine not to exceed one hundred dollars ($100.00), or by imprisonment not to exceed 60 days in the Allegheny County Jail or Allegheny County Workhouse, or both such fine and imprisonment.

SECTION 13. SEVERANCE CLAUSE. The provisions of this ordinance are declared to be severable and if any section, sentence, clause or phrase of this ordinance shall for any reason be held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses and phrases of this ordinance but they shall remain in effect, it being the legislative intent that this ordinance shall stand notwithstanding the invalidity of any part.

SECTION 14. REPEALING CLAUSE. All ordinances or parts of ordinances inconsistent with the provisions of this ordinance, be and the same are hereby repealed.

Passed finally the 8th day of December, A.D. 1948.

C. A. KINKAID,
Mayor and President of Council

Attest:

C. W. FLEGAL, SR.
City Clerk

This ordinance becomes effective the 18th day of December, 1948, A.D.

C. W. FLEGAL, Sr.,
City Clerk