George LOVE, Susan Martinez, and Geneva Hunt, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

MAYOR, CITY OF CHEYENNE, WYOMING and Don Erickson, Individually and in his official capacity as Mayor, City Council of Cheyenne, Wyoming and James T. Griffith, Individually and in his official capacity as President; and the members, employees, agents and successors of the above, Defendants.

No. C77–197B.

United States District Court, D. Wyoming.

March 24, 1978.

Stephen L. Pevar, Denver, Colo. and Richard C. Wolf, Cheyenne, Wyo., for plaintiffs.

J. Douglas McCalla, Asst. City Atty. and Bert T. Ahlstrom, Jr., City Atty., Cheyenne, Wyo., for defendants.

## MEMORANDUM OPINION

BRIMMER, District Judge.

The plaintiffs, George Love, Susan Martinez and Geneva Hunt, have brought this

action seeking declaratory and injunctive relief from an alleged unconstitutional provision of the Cheyenne, Wyoming City Code. This Court has jurisdiction pursuant to 28 U.S.C. Section 1343 and venue is properly in the United States District Court for the District of Wyoming.

The plaintiffs, Love and Martinez, as members of the Holy Spirit Association of the Unification of World Christianity, also known as the Unification Church, which has been recognized as a legitimate, world-wide religious organization by the United States Internal Revenue Service and the Wyoming Department of Revenue and Finance, wish to engage in a campaign of "literature evangelism" in which members of the church will go from door-to-door speaking with local residents about religious matters, distributing church literature, and soliciting donations. In this manner, they are able to disseminate the fundamental doctrine of the Unification Church, called the "Divine Principle." The Plaintiff Hunt is a resident of the city of Cheyenne who desires to be solicited by non-commercial organizations without prior request or invitation. The defendants are the Mayor, President and City Council of Cheyenne, Wyoming together with their members, employees and successors.

On June 2, 1977 Love and Martinez traveled to Cheyenne from Laramie, Wyoming in order to practice their "literature evangelism." They purchased a $1,000 surety bond and thereafter attempted to obtain a solicitor's permit from the Cheyenne City Police. The Assistant Chief of Police informed them, however, that even with a solicitor's permit they would be prohibited from going door-to-door in Cheyenne because of Cheyenne City Ordinance, Section 32–3, which provides:

> The practice of going in or upon private residences, business establishments, public buildings or offices in the city by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, books, pictures, periodicals, or anything whatsoever, not having been requested or invited to do so by the owner, manager or occupant of such private residence, business establishment, public building or office for the purpose of soliciting orders for the sale of goods, wares, merchandise or anything whatsoever or for the purpose of disposing of or peddling or hawking same, is hereby declared unlawful.

The plaintiffs contend that Section 32–3, as applied to them, results in an unconstitutional deprivation of their First and Fourteenth Amendment rights to freedom of religion and speech. The defendants deny that Section 32–3 is unconstitutional especially when read in conjunction with the whole of Chapter 32 and in particular Section 32–29, which pertains to the issuance of a peddling permit. The plaintiffs, however, allege that Section 32–29 is itself unconstitutional and that a reading of Chapter 32 in its entirety only serves to further confuse the obligations imposed upon a non-commercial solicitor.

In factual settings strikingly similar to the case at bar, the Supreme Court in *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), and *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), and this Court in *Tate v. Akers*, 409 F.Supp. 978 (D.C.Wyo.1976), have held that provisions like Section 32–3, commonly referred to as "Green River Ordinances" cannot constitutionally prohibit non-commercial solicitation. Although such ordinances may well be constitutional when directed against commercial pursuits, *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Green River v. Fuller Brush*, 65 F.2d 112 (10th Cir. 1933), the defendants in this case have enforced Section 32–3 without distinguishing between commercial and non-commercial endeavors.

There can be no doubt that "literature evangelism" activities engaged in by the Plaintiffs Love and Martinez on behalf of the Unification Church are non-commercial in nature. Members of the Church do not receive commissions for their work. In making their door-to-door solicitations, nothing is ever sold. Contributions are re-

quested and items may be gratuitously extended to the contributor because of his or her donation, but if a resident inquires as to the price of an item the church member explains that it is not for sale and that the item is offered to contributors only as a token of appreciation for a contribution. The average value of the items offered is 40 cents, whereas the average contribution is between one and two dollars and, in many instances, the resident rejects the gift despite the fact that a contribution has been made.

Nor has there been a sale of literature in the instant case. There is nothing in the record to indicate anything more than the simple distribution of religious material. Nevertheless, the fact that members of a church sell literature which conforms to their religious beliefs does not convert them into peddlers. *Tate v. Akers,* 565 F.2d 1166 (10th Cir. 1977). While there may well be commercial aspects to the sale of theological materials, their distribution is but another method by which members of a particular church advance their religious beliefs. *Tate v. Akers,* 409 F.Supp., *supra* at 981. In the final analysis, the primary purpose of the disciples of the Unification Church upon entering a private dwelling is to spread the message of the "Divine Principle."

The rights guaranteed in the First Amendment are broad in scope, and its protection extends not only to the source of communication but also to the recipient, such as the Plaintiff Hunt. *Virginia Board of Pharmacy v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Martin v. Struthers, supra.* The Supreme Court in *Martin* stated in reference to the ordinance involved there:

The ordinance does not control anything but the distribution of literature, and in that respect it substitutes the judgment of the community for the judgment of the individual householder. It submits the distributor to criminal punishment for annoying the person on whom he calls, even though the recipient of the literature distributed is in fact

glad to receive it. 319 U.S. at 143–144, 63 S.Ct. at 863.

Restraints on religious activities or on the freedom of speech must necessarily collide with the First and Fourteenth Amendments and can only be permitted upon the showing of a compelling state interest which overrides the infringed rights. *Yoder v. Wisconsin,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Rowan v. United States Post Office,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). No such interest is presently at stake. The exercise of free speech and religious freedom, in the non-commercial context of this case, have a higher dignity under the Constitution than municipal convenience. *Martin v. Struthers, supra* 319 U.S. at 151–152, 63 S.Ct. 862. Thus Section 32–3, cannot constitutionally deny plaintiffs the right to engage in or receive non-commercial solicitation or distribution.

The defendants contend that non-commercial solicitation is not prohibited, and that the plaintiffs may pursue their evangelistic work if they obtain a permit in accordance with Section 32–29 of the City Code. It therefore must be determined whether the balance of Chapter 32, and in particular the Cheyenne permit ordinance, removes the unconstitutional blemish from the face of Section 32–3.

Although probably inapplicable because of its limitation of the necessity of obtaining a permit to engagement "in business," Section 32–19 of the Cheyenne City Code provides:

It shall be unlawful for any person to engage in business as a peddler within this city without first obtaining a permit to do so.

Section 32–29 provides further:

If, as a result of investigation the applicant's character or business responsibility is found to be unsatisfactory, the Chief of Police shall endorse on the application his disapproval and his reasons for the same, and return the application to the city clerk who shall notify the applicant that his application is disapproved and that no permit shall be issued.

 The defendants' right to regulate the time, place and manner of solicitation and distribution of literature is unquestioned. Municipal officials have the power to protect its citizens from crime and undue annoyance. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). The Court in *Martin v. Struthers, supra,* 319 U.S. at 144, 63 S.Ct. at 864, stated in that regard:

Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit . . . In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. Crime prevention may thus be the purpose of regulatory ordinances.

 As previously noted, "Green River Ordinances" are fully effective when directed against commercial solicitors. Where, however, rights which are deeply rooted in the First Amendment are involved, a government may only regulate with narrow specificity. No one is required to speculate at peril of life, liberty or property as to the meaning of a penal statute. *Hynes v. Mayor of Oradell, supra.*

In *Schneider v. State,* 308 U.S. 147, 158, 164, 60 S.Ct. 146, 149, 152, 84 L.Ed. 155 (1939) the Supreme Court invalidated a city permit statute that dealt specifically with house-to-house canvassers and solicitors. The statute required such persons to obtain a permit which would not issue if the Chief of Police determined that "the canvasser is not of good character or is canvassing for a project not free from fraud." The provision was held unconstitutional because the canvasser's "liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer's discretion."

Similarly in *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969), a permit ordinance was struck down which authorized public officials to grant or deny a parade license based on "their own ideas of 'public welfare, peace, safety, health, decency, good order, morals and convenience.'" The Court found that the language of the ordinance gave the officials unbridled power to prohibit any parade, procession, or demonstration.

 The Supreme Court holdings in *Schneider, Shuttlesworth* and *Hynes* control the disposition of this case. The discretionary leeway vested in the Cheyenne Chief of Police enables him to deny an application for a permit solely upon his determination that an applicant's character or business responsibility is unsatisfactory. Admittedly, the Chief is supplied with extensive information on which to base his decision, but the fact remains that he is given no guidelines on how to apply that information. In sum, the Chief of Police is given undefined, unbridled discretion in the issuance or denial of a permit. This Court can only conclude, as did the Supreme Court in *Shuttlesworth, supra* at 150, 89 S.Ct. at 938, that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective and definite standards to guide the licensing authority, is unconstitutional." Section 32–3 is not validated or clarified by any other provisions contained in Chapter 32. While, Section 32–3 appears to prohibit all uninvited solicitation of orders or disposition of goods by peddlers, the subsequent provisions, including the permit sections, seem to imply that peddling is permitted in certain instances. *See* Section 32–4 *et seq.*. The confusion created by Chapter 32 is underscored by the differing interpretations given Section 32–3 by various city officials.

For example, the city attorneys now contend that Section 32–3 does not prohibit non-commercial door-to-door solicitation if a permit is obtained. However, the Chief of

Police's office informed the Plaintiffs Love and Martinez that even with a permit they could not solicit door-to-door due to the operation and effect of Section 32–3. Indeed, on June 6, 1977 two members of the Unification Church were arrested and convicted for violating Section 32–3.

██ Men of common intelligence are not required to guess at the meaning of an ordinance. *Hynes v. Mayor of Oradell, supra* at 620. In the case at bar, Plaintiffs Love and Martinez would necessarily have to guess at their own peril as to the meaning of Section 32–3. Clearly where the Chief of Police and the City Attorney are not in accord as to how that ordinance should be interpreted, the plaintiffs cannot be expected to know what obligations Section 32–3 impose upon them. Moreover, the plaintiffs have no guarantees that future city officials will not have different interpretations of Section 32–3 than those now held by the present administration.

It is therefore the opinion of this Court that Sections 32–3 and 32–29 of the Cheyenne City Code cannot prohibit the Plaintiffs Love and Martinez from engaging in their campaign of "literature evangelism", and yet remain within the confines of the constitution. Nor can those ordinances deny the Plaintiff Hunt the right to receive uninvited non-commercial solicitations. Section 32–3 can lawfully prevent door-to-door commercial endeavors to protect the city's citizens from undue annoyance and crime, but it cannot, as it has here, be indiscriminately applied to both commercial and non-commercial activities. Similarly, Section 32–29 cannot validly foreclose the plaintiffs' religious pursuits. Permit ordinances can permissibly regulate the time, place, and manner of non-commercial solicitation, if the regulating official is given specific guidelines on which to base his determination of issuance or denial. However, in this case the Cheyenne Chief of Police may deny a permit, in his discretion, simply because he is unsatisfied with the character of the applicant.

The issue not having been raised, the Court does not express any opinion as to the validity or constitutionality of requiring the Plaintiffs Love and Martinez to purchase a $1,000 surety bond pursuant to Section 32–26 of the Cheyenne City Code prior to engaging in their literature evangelism work.

Accordingly, judgment will be entered permanently enjoining the defendants from enforcing Sections 32–3 and 32–29 of the Cheyenne City Code, against the Plaintiffs Love and Martinez as non-commercial religious solicitors, and from restricting the Plaintiff Hunt in the receipt of such solicitations.