HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD
CHRISTIANITY v DEPARTMENT OF TREASURY

Docket No. 66387. Submitted August 3, 1983, at Lansing.—Decided
February 6, 1984.

Respondent, Michigan Department of Treasury, Revenue Divi-
sion, twice notified petitioner, Holy Spirit Association for the
Unification of World Christianity (Unification Church), by mail
that the department had been apprised of retail sales activity
by church members and requested that petitioner complete and
return a sales tax license application. The petitioner did not
respond to either letter. The department then issued a notice of
intent to assess against the petitioner sales taxes covering the
period of July 1, 1975, through June 30, 1979. The assessment
proposed was $10,000 in retail sales tax plus penalty and
interest, a total of $14,175.85. The petitioner again did not
respond. Three weeks later, the department issued a notice of
final assessment for $14,175.85. On September 19, 1979, peti-
tioner filed a notice of appeal to the State Board of Tax Appeals
(SBTA), claiming that it had not engaged in sales at retail
during the relevant period. Following an evidentiary hearing,
the SBTA affirmed the assessment. Petitioner appeals from the
SBTA's order affirming the assessment. *Held:*

1. The decision by the SBTA was not supported by compe-
tent, material, and substantial evidence on the whole record.
The evidence is legally inadequate to show that petitioner had
engaged in sales at retail during the relevant period.

2. Petitioner may not now contest the allocation of the
burden of proof concerning the accuracy of the deficiency
assessment since petitioner's counsel stated at the hearing that
the amount of the deficiency was not being contested.

3. Petitioner had the burden of proving that it was not

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, State and Local Taxation § 787.
[2] 68 Am Jur 2d, Sales and Use Taxes § 155.
[3] 72 Am Jur 2d, State and Local Taxation § 1151.
[4] 73 Am Jur 2d, Statutes §§ 142, 145, 258.
[5] 29 Am Jur 2d, Evidence § 126.
[6] 68 Am Jur 2d, Sales and Use Taxes § 5.
[7, 8] 68 Am Jur 2d, Sales and Use Taxes § 68.

making taxable sales. The separate statutory provisions regarding the allocation of the burden of proof are not in conflict. Petitioner's contention that such allocation of the burden of proof denied it procedural due process is undermined by its failure to seek an evidentiary hearing on the question of the levy of the deficiency prior to taking the administrative appeal.

4. The department need not show that the petitioner is a "taxpayer" prior to proceeding under the statutory provision regarding deficiency assessments. The department served upon the petitioner the notice required by the statute and the petitioner did not respond to such notice.

5. The burden of proof encompasses two separate concepts: (1) the risk of nonpersuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may be shifted to the opposing party. Following the evidentiary presentation by the petitioner, it had met its burden of going forward with the evidence. Petitioner also met its burden of persuasion. The department's proofs were not of the same caliber as the petitioner's proofs.

6. The transactions described by petitioner's witnesses did not constitute taxable retail sales. The proofs submitted at the hearing show at best isolated sales by an entity not engaged in the business of retail sales and therefore not subject to sales tax.

7. Petitioner's possible liability under the Use Tax Act was not considered since it was not the subject of the proceedings below.

Reversed.

1. ADMINISTRATIVE LAW — TAXATION — STATE BOARD OF TAX APPEALS — EVIDENCE — CONSTITUTIONAL LAW.

Decisions by the State Board of Tax Appeals must be supported by competent, material, and substantial evidence on the whole record; substantial evidence must be more than a scintilla of evidence, though it may be substantially less than the preponderance of evidence (Const 1963, art 6, § 28).

2. TAXATION — DEPARTMENT OF TREASURY — GENERAL SALES TAX ACT — DEFICIENCY ASSESSMENTS — BURDEN OF PROOF.

The Department of Treasury is empowered pursuant to the General Sales Tax Act to make a deficiency assessment; the burden of proof only as to the amount of the assessment shifts to the taxpayer after notice and hearing as provided by the act; a party's subjective belief that it is not liable under the act

does not exclude the party from compliance with the act (MCL 205.67; MSA 7.538).

3. Taxation — Appeal — Department of Revenue — State Board of Tax Appeals — Burden of Proof.

The burden of proof in any appeal from any assessment, decision, or order by the Department of Revenue taken in the State Board of Tax Appeals is upon the appellant (MCL 205.7; MSA 7.657[7]).

4. Statutes — Judicial Construction.

A statute unambiguous on its face is to be enforced as written, and courts will avoid further interpretation or construction of its terms.

5. Trial — Burden of Proof.

Two separate concepts encompass the burden of proof at a hearing: (1) the risk of nonpersuasion, which does not shift during the course of the hearing, and (2) the burden of going forward with the evidence, which may be shifted to the opposing party.

6. Taxation — Sales Tax.

A sales tax is levied upon persons engaged in the business of making sales at retail (MCL 205.52; MSA 7.522).

7. Taxation — Sales Tax — Sale at Retail.

A "sale at retail" pursuant to the General Sales Tax Act is a transaction by which the ownership of tangible personal property is transferred for consideration when the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any other purpose than for resale (MCL 205.51[b]; MSA 7.521[1][b]).

8. Taxation — Sales Tax — Sale at Retail.

A "sale at retail" pursuant to the General Sales Tax Act does not include isolated sales by an entity not engaged in the business of retail sales and therefore not subject to sales tax (MCL 205.51[1][f]; MSA 7.521[1][f]).

*Gromek, Bendure & Thomas* (by *James G. Gross*), and *Melrod, Redman & Gartlan, P.C.* (by *Neil I. Levy*), of counsel, for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch*

and *Thomas J. Kenny,* Assistants Attorney General, for respondent.

Before: Hood, P.J., and Cynar and P. J. Marutiak,* JJ.

Cynar, J. Petitioner appeals as of right from a decision of the State Board of Tax Appeals, issued August 2, 1982, affirming a retail sales tax assessment against petitioner in the amount of $14,175.85.

The Holy Spirit Association for the Unification of World Christianity (Unification Church or petitioner) was founded by the Reverend Sun Myung Moon in Korea in 1954. The Unification Church is presently active in more than 100 nations, including the United States. It was incorporated in California in 1961 and is registered in Michigan as an out-of-state corporation.

There is a heavy emphasis in the Unification Church upon public proselytizing and solicitation of funds to support church activities. The fundraising endeavors of the membership in Michigan irked certain local officials and ultimately piqued the interest of the respondent, Department of Treasury, which believed that church members might be engaged in retail sales.

On January 9, 1979, and again on June 8, 1979, respondent notified petitioner by mail that respondent had been apprised of retail sales activities by church members, and requested that petitioner complete and return a sales tax license application. No response was received to either letter. On August 2, 1979, respondent issued a notice of intent to assess against petitioner sales tax covering the period of July 1, 1975, through June 30,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1979. The assessment proposed was $10,000 in retail sales tax plus penalty and interest, a total of $14,175.85. Once again, no response was forthcoming from petitioner.

Three weeks later respondent issued a notice of final assessment; the assessment amount was not changed. On September 19, 1979, petitioner filed a notice of appeal to the State Board of Tax Appeals (SBTA), claiming that it had not engaged in sales at retail during the relevant period.[1]

Following an evidentiary hearing, the SBTA affirmed the assessment in a brief written opinion:

"Appellant is a California non-profit corporation with its principal office at 4 West 43rd Street, New York, New York 10036. During the period July 1, 1975, through June 30, 1979, members of appellant solicited funds and distributed personal tangible property such as flowers and candy.

"Appellee issued the sales tax assessment on the belief that the members were selling the personal property in question. Appellant contends that the members were not selling the items but were making gifts of the items, and at the same time were soliciting funds as contributions. The sole issue is whether the subject items were 'sold' or 'given away'. Testimony was received by witnesses for both parties, appellant's witness indicating that the personal property items in question were given away and not sold, and the witness for appellee, a former member of appellant, testifying that the articles in question were definitely sold and not given away.

"After careful review of the testimony presented at

---

[1] MCL 205.779(3); MSA 7.650(79)(3) purported to require all cases previously appealable to the SBTA to be appealed to the State Tax Tribunal after December 31, 1976. However, the existence and jurisdiction of the SBTA continued until it was formally abolished by 1980 PA 162, effective December 31, 1981. *Dep't of Treasury v Sperandeo,* 112 Mich App 337, 339-340; 315 NW2d 863 (1981), *lv den* 414 Mich 953 (1982); *Queen Airmotive, Inc v Dep't of Treasury,* 105 Mich App 231; 306 NW2d 461 (1981). It was therefore properly able to hear this case.

the hearing, it is the belief of the board that the burden of proof rests upon the appellant, and he *[sic]* has failed to overcome it."

Petitioner vigorously maintains that imposition of a sales tax upon the activities of its membership would affect an unconstitutional tax upon its right of free exercise of religion, see *Kollasch v Adamany,* 99 Wis 2d 533; 299 NW2d 891 (1980), *rev'd* 104 Wis 2d 552; 313 NW2d 47 (1981); *State v Van Daalan,* 69 SD 466; 11 NW2d 523 (1943), or, in the alternative, that it would involve an impermissible entanglement with religious affairs, *Pletz v Secretary of State,* 125 Mich App 335, 373-374; 336 NW2d 789 (1983); *First Lutheran Mission of Knolls v Dep't of Revenue,* 44 Colo App 417; 613 P2d 351 (1980); Tribe, American Constitutional Law, § 14-12, pp 865-880 (1978). We do not reach these issues, however, since we find that the decision of the SBTA was not supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

As a preliminary matter, we consider petitioner's argument that the SBTA misallocated the burden of proof. It is apparent from the board's opinion that it laid upon petitioner not only the burden of refuting the assessment amount, but also the burden of demonstrating that it had not engaged in sales at retail. Section 17 of the General Sales Tax Act, MCL 205.51 *et seq.;* MSA 7.521 *et seq.,* empowers the revenue division of the Department of Treasury to make a deficiency assessment. This section provides, so far as is relevant, as follows:

"*Every person liable for any tax imposed under this act* shall keep an accurate and complete beginning and annual inventory and purchase records of additions to

inventory, complete daily sales records, receipts, invoices, bills of lading and any and all pertinent documents in such form as the department may require and wherever an exemption from sales tax is claimed by reason of the sale being for resale or for any of the other exemptions or deductions granted under this act, there shall be a record kept of the name and address of the person to whom the sale is made, the date of the sale, the article purchased, the use to be made of the article, the amount of the sale and if that person has a sales tax license, that number shall also be noted thereon.

\* \* \*

"In the event *the taxpayer* fails to file a return or to maintain or preserve proper records as prescribed in this section or the department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department shall be empowered to assess, upon such information as is available or may come into possession of the department, the amount of the tax due from the taxpayer. *Such assessment after notice and hearing as hereinafter provided shall be deemed to be prima facie correct for the purpose of this act and the burden of proof of refuting such assessment shall be upon the taxpayer."* (Emphasis added.) MCL 205.67; MSA 7.538.

The General Sales Tax Act also provided a mechanism for parties desiring to contest the assessment. MCL 205.72; MSA 7.543, operative at the time of proceedings below, provided that upon receiving notice of intent to levy the deficiency the taxpayer could "demand a hearing on the question of the levy of such deficiency". If a hearing was demanded, the contestant was entitled to reasonable notice and other procedural safeguards:

"The taxpayer shall be entitled to appear before the department and be represented by counsel and present testimony and argument. After the hearing the depart-

ment shall render its decision in writing and, by order, levy any deficiency found by it to be due and payable.

"If any taxpayer is aggrieved by any decision of the department, he may appeal under the provisions of Act No. 122 of the Public Acts of 1941, as amended * * *." MCL 205.72; MSA 7.543. Repealed by 1980 PA 164, imd. eff. June 18, 1980.

1941 PA 122 was the act establishing the Department of Revenue and provided for appeals to the SBTA. Section 7 of that act, governing appeals procedure, provided in relevant part:

"The state board of tax appeals, following the filing of such answer, shall have jurisdiction to review such assessment, decision or order and both the appellant and the department shall have the right to swear witnesses and to be represented by counsel before said state board of tax appeals. Said hearing shall be heard within 60 days after filing of said answer, as in a court not of record and the legal rules of evidence prevailing in the circuit courts of this state shall be enforced. *The burden of proof in any appeal from any assessment, decision or order shall rest with the appellant.*" (Emphasis added.) MCL 205.7; MSA 7.657(7).

We initially note that petitioner may not now contest the allocation of the burden of proof concerning the accuracy of the deficiency assessment. In objecting to examination concerning the existence of fund-raising books or records maintained by the church, petitioner's counsel stated: "[W]e are not contesting the amount of the deficiency but solely the question of whether or not the Church has engaged in any sale activity within the State of Michigan". The question remains whether petitioner had the burden of proving that it was not making taxable sales. We believe that it did.

Section 7 of the revenue department statute,

*supra,* is the controlling provision, and it clearly places the burden of proof upon the appellant. A statute unambiguous on its face is to be enforced as written, and courts will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931); *Espinoza v Bowerman-Halifax Funeral Home,* 121 Mich App 432, 436; 328 NW2d 657 (1982), *lv den* 417 Mich 1017 (1983).

We concur with petitioner that § 17 of the General Sales Tax Act, governing deficiency assessments, shifts the burden of proof after notice and hearing only as to the amount of the assessment. By its terms the section would apply to petitioner if it had any sales tax liability, a matter dependent upon proofs apart from those pertinent to the assessment amount. See *Arbor Sales, Inc v Dep't of Treasury,* 104 Mich App 181; 304 NW2d 522 (1981), noting that a person or organization may not be found liable for a tax merely because it fails to keep accurate and complete records.

We reject, however, the implication in petitioner's argument that respondent could not proceed under this section because it had not shown that petitioner was a "taxpayer". The language of MCL 205.67; MSA 7.538 does not exclude persons or entities which subjectively believe they are not liable under the General Sales Tax Act. Indeed, the statute explicitly provides: "Whenever *in the judgment of the department* it is necessary, it may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records, *as the department deems sufficient to show whether or not such person is liable to tax under this act".* (Emphasis added.) MCL 205.67; MSA 7.538. In this case such notice was given petitioner, and it did not respond.

We also reject petitioner's assertion that § 17 of the General Sales Tax Act, affecting the burden of proof only as to the assessment amount, is exclusively controlling. As noted above, the General Sales Tax Act provided that appeal from an adverse department ruling could be taken under the provisions of 1941 PA 122. MCL 205.72; MSA 7.543. Section 7 of that act governed the SBTA appellate procedure, which unambiguously placed the burden of proof on the appellant. We find no conflict in these separate statutory provisions. Petitioner's contention that such allocation of the burden of proof denied it procedural due process is undermined by its failure to seek an evidentiary hearing prior to taking the administrative appeal. MCL 205.72; MSA 7.543. We conclude that petitioner bore the burden of proving that it had not engaged in taxable retail sales.

The burden of proof encompasses two separate concepts: (1) the risk of nonpersuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may be shifted to the opposing party. *Kar v Hogan,* 399 Mich 529, 539-540; 251 NW2d 77 (1976). Petitioner's evidentiary presentation consisted of the testimony of two of its members and submission of a church document on fund raising promulgated during the spring of 1977. Scott Greene, petitioner's public relations director in Michigan, and Ricky Sorenson, assistant director of the church in Michigan, rendered testimony concerning fund-raising procedure.

Greene indicated that every church member was responsible for carrying on the church's evangelical mission, which included the solicitation of funds. Although there was no "standard line" used in seeking donations, Greene delivered a sample of his approach:

"My name is Scott Greene. I'm a volunteer for the Unification Church, and today we are raising funds to help support our christian education and religious activities. Could you please help us with your support?"

Greene admitted that items such as candy or flowers were frequently distributed in conjunction with the solicitation. However, both Greene and Sorenson indicated that donations were often received where no flowers or candy had been given, and Greene testified that these gifts were commonly bestowed by members even when no donation was received. Greene further testified that many people requested receipts to verify the fact and amount of their contribution for tax purposes.

The document submitted by petitioner concerning fund-raising procedure included these paragraphs:

"Since we are not selling items, but asking for donations, two words that create a wrong impression are 'buying' and 'selling'. The use of these two words imply that our solicitation is of a commercial or marketing nature. Funds solicited are strictly on a donation basis and a distinction must be made between the two concepts. The easiest way to phrase the amount we would like to receive as a donation is, 'Most folks help with one dollar.' Or, 'Most everybody gives one dollar.'

"Remember that no product used in connection with solicitation of contributions may be offered for sale. The product must be made available to all those willing to listen to your witnessing on the teachings and activities of the church, whether or not a contribution is actually made."

According to Greene, every church member was provided with a copy of this policy statement. Although it was not handed down until the spring of 1977, Sorenson, familiar with the custom and practice of the church in Michigan prior to pro-

mulgation of the policy statement, indicated that similar standards were followed at that time. Church members were to ask for donations, but to "make very clear that we weren't selling anything".

Although Greene would "never ask for less than a dollar", he would receive "anywhere from nothing to several dollars". If a person inquired as to the price of an item, Greene would respond that there was no price, but that a donation of one or two dollars would be appreciated. Sorenson also indicated that the amount of individual donations varied greatly.

We are satisfied that at this point in the hearing, petitioner had met its burden of going forward with the evidence. The sales tax is levied upon "persons engaged in the business of making sales at retail". MCL 205.52; MSA 7.522. The General Sales Tax Act defines the term "sale at retail" as:

"a transaction by which is transferred for consideration the ownership of tangible personal property when the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any other purpose than for resale". MCL 205.51(1)(b); MSA 7.521(1)(b).

The proofs put in by petitioner show that its members used the distribution of low-cost articles to facilitate the solicitation of funds. The primary purpose of this activity is to raise money for the Unification Church, which respondent concedes is a bona fide religious organization. Transactions similar to those described by Greene and Sorenson were discussed by two federal courts in the context of challenges to anti-solicitation ordinances. In *Evans v Fullard,* 444 F Supp 1334, 1335 (WD Penn, 1978), the Unification Church sought injunc-

tive relief from an ordinance requiring solicitors or canvassers to obtain a permit and license. A solicitor or canvasser was defined as a person "taking or attempting to take orders for sale of goods * * * or for services". The *Evans* court found that it could avoid First Amendment analysis and decide the issue in the church's favor based upon the character of the solicitations:

"While the solicitors did have flowers and candy with them on occasion, the evidence was that these items were not sold but were given to those who made contributions. No price was stated for the items of personal property, nor was there any set amount of donation solicited in exchange for either a specific amount of product or identified personal property." (Footnote omitted.) *Evans, supra,* p 1137.

In *Love v Mayor, City of Cheyenne,* 448 F Supp 128 (D Wy, 1978), members of the Unification Church challenged an ordinance which in essence made door-to-door solicitation unlawful. Noting that such ordinances could not constitutionally prohibit noncommercial solicitation,[2] the court stated:

"There can be no doubt that 'literature evangelism' activities engaged in by the Plaintiffs Love and Martinez on behalf of the Unification Church are non-commercial in nature. Members of the Church do not receive commissions for their work. In making their door-to-door solicitations, nothing is ever sold. Contributions are requested and items may be gratuitously extended to the contributor because of his or her donation, but if a resident inquires as to the price of an item the church member explains that it is not for sale and that the item is offered to contributors only as a token

---

[2] *Cantwell v Connecticut,* 310 US 296; 60 S Ct 900; 84 L Ed 1213 (1940); *Martin v Struthers,* 319 US 141; 63 S Ct 862; 87 L Ed 1313 (1943).

of appreciation for a contribution. The average value of the items offered is 40 cents, whereas the average contribution is between one and two dollars and, in many instances, the resident rejects the gift despite the fact that a contribution has been made." *Love, supra,* pp 130-131.

Similarly, we are persuaded that the transactions described by Greene and Sorenson are not sales at retail; rather the distributions of personal property in these transactions are merely incidental to the solicitation of contributions. See, also, *Hope School v United States,* 612 F2d 298, 304 (CA 7, 1980), but *cf. People v Wood,* 93 Misc 2d 25; 402 NYS2d 726 (1978). A key statutory element, that the property be transferred for consideration, is absent. MCL 205.51(1)(b); MSA 7.521(1)(b). In some cases, the gift of candy or flowers is bestowed even when no donation is received. In other cases the donation is disproportionate to the value of the item offered, or the donor refuses to accept the item; in both situations it is obvious that the money is given with charitable purpose, or for a tax deduction, but not as consideration for the offered property. The donor is told that the items have no price, and though definite amounts may be stated as what "most people give", greater or lesser amounts are accepted.

Petitioner, in our view, met its burden of persuasion, *Kar v Hogan, supra.* Respondent's proofs were simply not of the same caliber. Its sole witness, Steven Kemperman, had at one time been a member of the Unification Church and had participated in fund raising.[3] When Kemperman solicited

[3] Petitioner claims that Kemperman's testimony should have been accorded little weight, since as a disenfranchised former member of the Unification Church he could harbor some animosity against it. Petitioner neglects to point out that its two witnesses, as current church members, had at least as much incentive as did Kemperman to abandon their objectivity.

funds, he would indicate that he was working for "Christian counseling centers", and would ask people to "buy some flowers to help out or buy a box of candy to help out". The witness indicated that each item offered had a set price, and that he never took less. Moreover, Kemperman would not even distribute religious literature to someone whom he solicited from unless he or she purchased candy or flowers.

Respondent's proofs included a written translation of a speech by Reverend Moon, in which he revealed to his followers the importance of fund raising and suggested that the sale of flowers could be a lucrative enterprise.

As previously noted, the decision of the SBTA may not be upheld unless supported by competent, material, and substantial evidence on the whole record. "Substantial evidence" must be more than a scintilla of evidence, though it may be substantially less than the preponderance of evidence necessary for most civil cases. *Russo v Dep't of Licensing & Regulation,* 119 Mich App 624, 631; 326 NW2d 583 (1982). We find the evidence legally inadequate under this standard to show that petitioner had engaged in sales at retail, as defined in MCL 205.51(1)(b); MSA 7.521(1)(b), during the relevant period. The value of Kemperman's testimony is severely eroded by the fact that he engaged in fund raising in Michigan for only three months during the four-year assessment period. Also, there was no evidence that Reverend Moon's speech, although seen by Kemperman in Boston in 1974, served as a procedural guide for fund raising in Michigan during the relevant years. Sorenson claimed that he had never seen that particular speech. Petitioner's witnesses rendered testimony that the church's national fund-raising policy was

followed in Michigan, and that similar principles were adhered to prior to formal promulgation of the policy in 1977. The transactions described by petitioner's witnesses were consistent with the fund-raising policy, and in our view did not constitute taxable retail sales. Proofs submitted at the hearing show at best isolated sales by an entity not engaged in the business of retail sales and therefore not subject to sales tax. MCL 205.51(1)(f); MSA 7.521(1)(f). We decline respondent's invitation to consider petitioner's liability under the Use Tax Act, see *Terco, Inc v Dep't of Treasury,* 127 Mich App 220; 339 NW2d 17 (1983), and MCL 205.91; MSA 7.555(1), since this matter was not the subject of the proceedings below.

Reversed.