ESPINOZA v BOWERMAN-HALIFAX FUNERAL HOME

Docket No. 60945. Submitted October 14, 1982, at Escanaba.—Decided November 17, 1982. Leave to appeal denied, 417 Mich __.

In 1978 the body of Michael Espinoza was found by the Alger County Sheriff's Department. The body was transported to the Bowerman-Halifax Funeral Home at Munising, where the county medical examiner determined that the decedent died as a result of a self-inflicted gunshot wound to the chest. The medical examiner then released the body to the funeral home. Robert and Paula Espinoza, parents of the decedent, made arrangements to have the body transferred to a Muskegon funeral home. Prior to transfer, Bowerman-Halifax had removed the clothing worn by the decedent and had commenced embalming procedures. The clothing was incinerated, allegedly because of spoliation from bodily fluids and insect infestation. In 1980, the parents, being unconvinced their son had committed suicide, secured an order of exhumation and had a pathologist perform an autopsy. The pathologist concluded that the cause of death could not be determined without extensive study of the clothing worn by the decedent at the time of this death. Thereafter, Robert and Paula Espinoza brought an action in Alger Circuit Court against Bowerman-Halifax Funeral Home, alleging that the funeral home violated a provision in the mortuary science act in that it failed to send the "remains" in accordance with the wishes of the next of kin. Defendant took the position that the clothing was not "remains" within the meaning of the mortuary science act and moved for summary judgment. William F. Hood, J., granted defendant's motion for summary judgment. Plaintiffs appeal. *Held:*

The term "remains" as used in the now-repealed mortuary science act means only the biological corpse and does not include clothing or other personal articles.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 145, 146, 148.

[2] 73 Am Jur 2d, Statutes § 155 *et seq.*

[3] 22 Am Jur 2d, Dead Bodies § 1.

1. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE PURPOSE.
    The fundamental goal of statutory construction is to give effect to
    the intent of the Legislature.

2. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE PURPOSE.
    Courts will avoid further interpretation of the language of a
    statute if the language is unambiguous on its face; however,
    where the language is ambiguous, a court will look to the
    object of the statute and will apply a reasonable construction
    which best accomplishes the purpose of the statute.

3. DEAD BODIES — REMAINS — MORTUARY SCIENCE ACT.
    The term "remains" as used in the now-repealed mortuary sci-
    ence act means only the biological corpse and does not include
    clothing or other personal articles (MCL 338.870[6]; MSA
    14.509[10][6]; see now MCL 339.1810; MSA 18.425[1810]).

*Wendell N. Davis,* for plaintiffs.

*Corcoran, Ingleson & Lewinski, P.C.* (by *Harry Ingleson, II),* for defendant.

Before: D. F. WALSH, P.J., and ALLEN and M. F. CAVANAGH, JJ.

ALLEN, J. Does the term "remains" appearing in the statute governing mortuary science and prac-tice, MCL 338.870(6); MSA 14.509(10)(6),[1] include only the body of the deceased or does it also include the clothing worn by the deceased at the time of death? On November 3, 1981, the trial court ruled that the term did not include clothing, and granted defendant's motion for summary judg-ment. Plaintiffs appeal of right. This question of first impression comes to us on facts which are not disputed and are derived from the pleadings.

On July 12, 1978, the Alger County Sheriff's

[1] At the time of decedent's death in 1978, the applicable statute was the mortuary science act. The mortuary science act was repealed by 1980 PA 299, immediately effective October 21, 1980. The comparable statutory provision, as reorganized under the new Occupation Code, is found at MCL 339.1810; MSA 18.425(1810).

Department discovered the dead body of plaintiffs' decedent, Michael Espinoza. The county medical examiner determined that the decedent died as the result of a self-inflicted gunshot wound to the chest. It was further determined that the decedent, who was clothed with a camouflaged hunting outfit, had been dead for approximately 48 hours preceding discovery.

The medical examiner promptly released the decedent's body to defendant Bowerman-Halifax Funeral Home at Munising. Plaintiffs were notified on the same day that the body was discovered, and made arrangements for the transfer of the decedent to the Balbirnie-Apostle Funeral Home of Muskegon, Michigan. Upon receipt of the body, defendant detached the clothing worn at the time of death and commenced embalming procedures. Decedent's clothing was incinerated, allegedly because of spoliation from bodily fluids and insect infestation. Late in the afternoon of July 13, 1978, defendant released the decedent's body and personal effects, consisting of a pair of glasses and an empty wallet. Burial took place in Muskegon July 18, 1978.

Not convinced that their son had committed suicide, the Espinozas requested the decedent's body be disinterred and subjected to an autopsy by a pathologist. Autopsy was conducted on February 22, 1980, by Dr. Henry De Leeuw, Muskegon coroner, who concluded that the cause of death could not be determined without extensive study of the clothing worn by the decedent at the time of his death. On October 10, 1980, plaintiffs filed suit against defendant for violation of § 10 of the mortuary science act, *supra,* which provides that no person shall send or cause to be sent "the remains of any deceased person without first having made

due inquiry as to the desires of the next of kin". Depositions were taken in lieu of trial. On November 3, 1981, the trial court granted defendant's motion for summary judgment under GCR 1963, 117.2(1). From such judgment, plaintiffs appeal of right.

The relevant portion of § 10 of the mortuary science act reads as follows:

"A public officer or employee, or the official of a public institution, convalescent home, private nursing home, maternity home, public or private hospital, physician or surgeon, or other person having a professional relationship with a decedent, coroner, or other public official having temporary custody of the remains of the decedent, shall send or cause to be sent to a person or establishment licensed under this act the remains of a deceased person without having first made due inquiry as to the desires of the next of kin and of the persons who may be chargeable with the funeral expenses of the decedent. *If next of kin are found, that person's authority and directions shall govern the disposal of the remains of the decedent.* A person or establishment licensed under this act receiving the remains in violation of this subsection shall not charge for service in connection with the remains before delivery of the remains as stipulated by the next of kin. This section shall not prevent a person or establishment licensed under this act from charging and being reimbursed for services rendered in connection with the removal of the remains of a deceased person in case of accidental or violent death, and rendering necessary professional services required until the next of kin or persons chargeable with the funeral expenses have been notified." MCL 338.870(6); MSA 14.509(10)(6). (Emphasis supplied.)

The narrow question is whether the term "remains" should be read to include the clothing worn by the decedent at the time of death. As both sides to this controversy recognize, the fundamen-

tal goal of statutory construction is to give effect to the intent of the Legislature. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977). The language of the statute is the best source for ascertaining the Legislature's intent. *People v Dunn,* 104 Mich App 419, 426; 304 NW2d 856 (1981). Thus, if the statute is unambiguous on its face, courts will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931), *Pittsfield Twp v City of Saline,* 103 Mich App 99; 302 NW2d 608 (1981). If the operative statutory language appears ambiguous, a court must look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the purpose of the statute. *Bennetts v State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980).

The initial inquiry is, therefore, whether the term "remains" as used in the statute is ambiguous. Although the term "remains" is not a frequently used one, it has distinct definition. Webster's Third New International Dictionary offers this definition: "a dead body". Webster's New World Dictionary (2d ed) defines "remains" as: "a dead body; corpse". Interestingly, the words "corpse" or "dead body" are the precise words which plaintiffs claim the Legislature would have used had it intended to include only the organic human residue. Accordingly, we find that the plain meaning of the term "remains" is a biological corpse, not inclusive of clothing or other personal articles.

Assuming, *arguendo,* that the term "remains" does not have a clear and precise meaning, but instead is ambiguous and subject to interpretation,

we still conclude that the Legislature intended the word to refer exclusively to a corpse or dead human body. Where words are ambiguous, legislative intent may be ascertained by looking to the purpose and objectives sought to be accomplished. *Smith v Grand Rapids City Comm,* 281 Mich 235, 240-241; 274 NW 776 (1937). When read as a whole, both § 10 of the mortuary science act, *supra,* and its successor act, MCL 339.1810; MSA 18.425(1810), focus on what is to be done or not done with a dead human body. The legislative focus was on the handling, the embalming and the treatment of the dead human body. Nothing in the statute even remotely suggests that the Legislature was concerned with the possibility that a deceased's personal effects or clothing would be stolen or otherwise misappropriated.

In summary, we hold that the word "remains", as used in the applicable statute at the time of the incident complained of, did not include the clothing of the deceased. Accordingly, we rule that the trial court did not err in granting summary judgment for defendant.

Affirmed. No costs, a question of public importance being involved.