PEOPLE v BEWERSDORF

PEOPLE v JOHNSON

Docket Nos. 88095, 87729. Argued January 8, 1991 (Calendar Nos. 2-3). Decided August 22, 1991. Certiorari denied in *Johnson* by the Supreme Court of the United States on February 24, 1992, 502 US — (1992).

Kim R. Bewersdorf pleaded guilty in the Oakland Circuit Court, David F. Breck, J., of operating a motor vehicle while under the influence of intoxicating liquor, third offense, and of being an habitual offender, second offense. The Court of Appeals, MICHAEL J. KELLY, P.J., and CAVANAGH, J. (SAWYER, J., concurring in part and dissenting in part), affirmed the OUIL-3 conviction, but vacated the habitual offender conviction, reasoning that the specific sentencing scheme applicable to OUIL offenses under the Motor Vehicle Code prevails to the exclusion of the general habitual offender statute (Docket No. 100065). The people appeal.

Valentine Johnson was charged in the St. Joseph Circuit Court with operating a motor vehicle while under the influence of intoxicating liquor, third offense, and as an habitual offender, second offense. The court, James Noecker, J., granted the defendant's motion to suppress evidence regarding two prior misdemeanor convictions and remanded the case to the district court. The Court of Appeals, SHEPHERD, P.J., and D. E. HOLBROOK, JR., and McDONALD, JJ., reversed in an unpublished opinion per curiam, holding that the procedural defect claimed with respect to the felony conviction for unlawful blood alcohol level, third offense, could not be raised indirectly in a subsequent proceeding charging an enhanced OUIL offense, reinstated the charge, and remanded the case to the circuit court (Docket No. 107498). The defendant appeals.

In an opinion by Justice GRIFFIN, joined by Justices BRICKLEY, BOYLE, RILEY, and MALLETT, the Supreme Court *held:*

The sentencing schemes of the habitual offender act and the

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic § 310; Habitual Criminals and Subsequent Offenders § 15.5.

See the Index to Annotations under Driving While Intoxicated.

provisions of the Motor Vehicle Code specifically applicable to
the felony of operating a motor vehicle while under the influ-
ence of intoxicating liquor do not conflict; rather, they dovetail
harmoniously. As indicated by the plain meaning of the habit-
ual offender act, the Legislature intended that the habitual
offender act be applicable to third and subsequent OUIL felony
convictions.

1. Under the Motor Vehicle Code it is a misdemeanor for any
person whose blood alcohol level is 0.10 percent or more or who
is under the influence of intoxicating liquor or a controlled
substance to operate a motor vehicle. A second conviction
within a seven-year period, while still a misdemeanor, is sub-
ject to an escalated sentence. However, if convicted within ten
years of two or more prior OUIL convictions, a person is guilty
of a felony and is subject to increased punishment. While the
code provides that the third, and each subsequent OUIL offense
within a ten-year period, is a felony, it does not specifically
provide for escalation of the maximum punishment for fourth
and subsequent OUIL convictions.

2. The habitual offender act provides that a person who has
been convicted of a felony and commits a subsequent felony is
to be punished in accordance with the statute's provisions. The
permissive language of the statute fixes only the upper bounda-
ries of the court's sentencing discretion, not obliging it to
impose enhanced punishment. The goal of the habitual offender
act is to harshly punish repeat offenders and to make it
tougher for criminals to avoid apprehension, conviction, and
adequate punishment. The Legislature did not intend to make
a separate substantive crime of being an habitual offender;
rather, for deterrent purposes, it intended to augment punish-
ment for second or subsequent felonies by providing a pro-
cedure for the court, in imposing sentence, to consider the
persistence of the defendant in pursuing a criminal course.

3. An unambiguous statute must be given effect, although
departure may be justified where a literal construction would
produce an absurd and unjust result clearly inconsistent with
its purposes and policies. If possible, statutes which appear to
conflict are to be read together and reconciled; however, where
two statutes actually conflict, both cannot stand. The language
of the habitual offender act is clear and unambiguous, allowing
no exception with respect to OUIL felony convictions. Read
together with the Motor Vehicle Code so as to give effect to
both, the sentence for an OUIL-3 felony, if it is a first felony
conviction, is to be as provided in the Motor Vehicle Code;
however, any subsequent OUIL felony conviction is subject to

the repeat offender provisions of the habitual offender act regardless of whether the underlying felony conviction is also an OUIL-3 offense. The plain meanings of the two statutes when read together are consistent with the legislative purpose of deterring repeated criminal acts by providing for escalated punishment.

4. The Double Jeopardy Clauses of the federal and state constitutions protect against successive prosecutions and multiple punishment for the same offense. It limits prosecutors and courts, but not the Legislature. A claimed violation of double jeopardy protections based on multiple-punishment grounds is appropriately resolved by ascertaining and enforcing the intent of the Legislature. The best source for determining legislative intent is the language of the statute. Nothing in the language of the OUIL statute indicates that a single misdemeanor OUIL conviction could be used only to enhance to felony status one subsequent OUIL offense. Instead, the statute provides that a person who commits an OUIL offense within ten years of two or more prior OUIL convictions is guilty of a felony. The words "or more" make clear that a third or subsequent offense is a felony if committed within a ten-year period. Thus, first and second OUIL misdemeanor convictions are to be counted in elevating a third OUIL offense to felony status. Thereafter, each of the three convictions are to be counted again if the violator commits a fourth OUIL offense within a ten-year period. Such a construction gives effect to the intent of the Legislature to authorize punishment on an escalating basis and to remove from the roads recidivist drunken drivers who pose a serious danger to the lives of many others.

*People v Bewersdorf,* affirmed in part and reversed in part.

*People v Johnson,* affirmed and remanded for further proceedings.

Chief Justice CAVANAGH, joined by Justice LEVIN, concurring in *Bewersdorf,* but dissenting in *Johnson,* stated that at this stage of the litigation it is clear that Johnson has no valid prior felony conviction. His conviction in 1978 is invalid, and, while the 1985 conviction remains valid as a prior misdemeanor, it should never have been elevated to felony status. Because the Court, at any time, may permit the reasons or grounds of an appeal to be amended or new grounds to be added, Johnson should be allowed to attack collaterally his prior conviction even though this issue was not within the limited scope of the grant of leave to appeal. His claim involves convoluted historical and procedural complexities, the nature and merits of which were not fully apparent when the limited grant order

was entered, and, most importantly, it would be a grave injustice to subject him to habitual felony offender liability when he had no valid prior felony conviction. The judgment of the Court of Appeals should be reversed insofar as it reinstates the habitual felony offender charge.

Justice LEVIN, dissenting, stated that the habitual offender provisions of the Code of Criminal Procedure should not be invoked to further enhance the penalty for driving under the influence of intoxicating liquor, third offense. This is a situation in which a departure from a literal construction of an act is justified to avoid producing an absurd and unjust result, and in which a literal construction would not be consistent with the purpose and policy of the drunk-driving provisions of the Motor Vehicle Code, i.e., to punish drunk drivers. Neither defendant, by reason of a prior record of conviction of felonies other than drunk driving, represented a greater menace to users of the highway than other persons convicted of OUIL-3 for the first time. Assisting prosecutors in plea bargaining and courts in moving their dockets are not purposes or policies of the drunk-driving provisions of the Motor Vehicle Code or of the Code of Criminal Procedure.

181 Mich App 430; 450 NW2d 271 (1989) affirmed in part and reversed in part.

1. AUTOMOBILES — DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR — SENTENCE ENHANCEMENT — MOTOR VEHICLE CODE — HABITUAL OFFENDER ACT.

The sentencing schemes of the habitual offender act and the provisions of the Motor Vehicle Code specifically applicable to the felony of operating a motor vehicle while under the influence of intoxicating liquor do not conflict (MCL 769.10 *et seq.*; MSA 28.1082 *et seq.*, MCL 257.902; MSA 9.2602).

2. AUTOMOBILES — DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR — SENTENCE ENHANCEMENT — MOTOR VEHICLE CODE — HABITUAL OFFENDER ACT.

First and second misdemeanor convictions of operating a motor vehicle while under the influence of intoxicating liquor under the Motor Vehicle Code are to be used to elevate third and subsequent OUIL convictions within a ten-year period to felony status; upon a fourth OUIL conviction within a ten-year period, each of the convictions may be used to raise the conviction to felony status and thereby permit the defendant to be charged as an habitual offender (MCL 769.10 *et seq.*; MSA 28.1082 *et seq.*, MCL 257.902; MSA 9.2602).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people in *Bewersdorf.*

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Jeffrey C. Middleton,* Prosecuting Attorney, and *Douglas K. Fisher,* Chief Assistant Prosecuting Attorney, for the people in *Johnson.*

*Elliot D. Margolis* for defendant Bewersdorf.

*Thomas J. Robertson* for defendant Johnson.

GRIFFIN, J. The principal issue in these consolidated criminal appeals is whether the habitual offender act[1] may be used to enhance a sentence otherwise applicable to a felony conviction under the Motor Vehicle Code[2] for operating a motor vehicle while under the influence of intoxicating liquor (OUIL).[3] It is argued by defendants that the two sentencing schemes stand in conflict, and that the provisions specifically applicable to a felony OUIL conviction under the Motor Vehicle Code should prevail as against the general habitual offender statute. We find that the statutes in question do not conflict; rather, they "dovetail harmoniously . . . ."[4] We conclude that the Legislature intended, as indicated by the plain meaning of the habitual offender act, that it be applicable to third and subsequent OUIL convictions.

[1] MCL 769.10 *et seq.;* MSA 28.1082 *et seq.*

[2] MCL 257.902; MSA 9.2602.

[3] MCL 257.625(6); MSA 9.2325(6).

[4] See *People v Bewersdorf,* 181 Mich App 430, 437; 450 NW2d 271 (1989) (SAWYER, J., concurring in part and dissenting in part).

I

### A. PEOPLE v BEWERSDORF

After entering guilty pleas, Kim Bewersdorf was convicted of the felony of operating a motor vehicle while under the influence of intoxicating liquor, third offense, MCL 257.625(6); MSA 9.2325(6), and of being an habitual offender, second offense, MCL 769.10; MSA 28.1082. Defendant was charged with OUIL-3, a felony, because his record included two prior misdemeanor OUIL convictions within the preceding ten years. In addition, defendant had previously been convicted of the felony of breaking and entering an occupied building with intent to commit larceny, MCL 750.110; MSA 28.305.

Prior to sentencing, the circuit judge advised defendant that he was subject to a maximum prison sentence of seven and one-half years. It was explained that, absent the felony conviction for breaking and entering, defendant would have been subject under the Motor Vehicle Code to a maximum prison sentence of five years for the current OUIL-3 felony. However, because this OUIL-3 offense is a second felony conviction, the maximum prison sentence was enhanced under the habitual offender act by one and one-half times, or seven and one-half years. After accepting defendant's pleas of guilty, the court sentenced him to one year in the county jail for the OUIL-3 offense, and then vacated that sentence and imposed an identical sentence for the habitual offender conviction.[5]

Thereafter, defendant moved to withdraw his guilty pleas, claiming that he had been inade-

[5] The people concede that the one-year sentence appears to be invalid because the habitual offender statute requires an indeterminate sentence. MCL 769.10(2); MSA 28.1082(2). This issue, however, has not been raised in this appeal.

quately advised of his rights.[6] After the motion was denied, defendant appealed and for the first time challenged the applicability of the habitual offender act.[7] The Court of Appeals directed defendant's attorney to submit a brief addressing, inter alia, the question whether

> the enhancement provisions of the Habitual Offender Act, MCL 769.11; MSA 28.1083, [may] be combined with the enhancement provisions of § 625(6) of the Motor Vehicle Code to generate a maximum possible punishment of 7½ years imprisonment.[8]

Thereafter, a divided Court of Appeals panel affirmed defendant's felony OUIL-3 conviction, but vacated the habitual offender conviction. 181 Mich App 430; 450 NW2d 271 (1989). Relying on *People v Tucker,* 177 Mich App 174; 441 NW2d 59 (1989), the majority reasoned that the specific sentencing scheme applicable to OUIL offenses under the Motor Vehicle Code "prevails to the exclusion of the general habitual-offender statute." 181 Mich App 433.

The prosecutor applied to this Court, and we granted leave to appeal. 435 Mich 867 (1990).

[6] Defendant maintained that the circuit court had failed to advise him of his right to have witnesses against him appear at trial. MCR 6.302(B)(3)(e).

[7] Defendant's appellate counsel sought to file an *Anders* brief and moved to withdraw. *Anders v California,* 386 US 738; 87 S Ct 1396; 18 L Ed 2d 493 (1967). However, the motion was denied.

[8] The Court of Appeals also directed the parties to brief the question whether "the trial court err[ed] by sentencing defendant without first ordering defendant to 'undergo screening and assessment by a person or agency designated by the Office of Substance Abuse Services' for the purpose of determining whether defendant would be likely to benefit from rehabilitative services, as required by § 625(8) of the Motor Vehicle Code?" However, the panel did not address the issue in its opinion.

### B. PEOPLE v JOHNSON

Valentine Johnson was charged with the felony offense of OUIL-3, MCL 257.625(6); MSA 9.2325(6), and as an habitual offender, second offense, MCL 769.10; MSA 28.1082. When in 1987 the current charges were brought, defendant's record included three prior convictions: a 1978 Indiana drunk-driving misdemeanor conviction,[9] a 1981 Michigan OUIL misdemeanor conviction, and a 1985 Michigan conviction for unlawful blood alcohol level (UBAL), third offense, which had been elevated to felony status by reason of the two previous convictions.[10]

In this case, defendant sought to avoid felony treatment of the current OUIL charge by moving to suppress evidence of all three prior convictions on the ground that the plea-taking in each case had been subject to procedural defects.[11] The circuit court granted defendant's motion with respect to the 1978 conviction and the 1985 conviction, and remanded the case to the district court for trial of the current OUIL charge as a misdemeanor.

The prosecutor then sought an interlocutory appeal,[12] challenging only the circuit court's suppression ruling with respect to the 1985 conviction.[13] The Court of Appeals reversed, holding that

---

[9] Although the parties' briefs refer to a 1975 Indiana conviction, the record reveals that the Indiana conviction was in 1978.

[10] See MCL 257.625(6); MSA 9.2325(6).

[11] During the proceedings which led to the 1985 OUIL-3 felony conviction, the defendant had not challenged the validity of either the 1978 or the 1981 convictions.

[12] Initially, the Court of Appeals denied the application for interlocutory appeal. However, this Court then issued an order directing the Court of Appeals to consider the issues raised as on leave granted. 430 Mich 859 (1988).

[13] Defendant cross appealed, claiming that the circuit court erred in failing to suppress evidence concerning the 1981 Michigan conviction. The Court of Appeals rejected defendant's arguments that the plea

the procedural defect claimed by defendant with respect to the 1985 conviction could not be raised "indirectly in a subsequent proceeding charging an enhanced OUIL offense."[14] The OUIL-3 felony charge was reinstated, and the Court of Appeals remanded the case to the circuit court for trial.[15]

Defendant then appealed to this Court.[16] In granting leave to appeal, we let stand the Court of Appeals rulings regarding defendant's collateral attacks on his prior convictions, and limited our focus to the relationship and applicability of the habitual offender act to OUIL felony offenses.[17] 435 Mich 880 (1990).

---

was involuntary and that the court taking the plea had failed to advise defendant of limitations on his appeal rights which would result from a plea of guilty.

[14] *People v Johnson,* unpublished opinion per curiam, decided October 30, 1989 (Docket No. 107498), p 4. Defendant claimed that at the time of plea-taking in connection with the 1985 conviction, he had not been advised, pursuant to MCL 257.625(9); MSA 9.2325(9), of the resultant limitation on his right to appeal a suspension or revocation of his driver's license.

[15] *Id.*

[16] Defendant sought to challenge his 1981 plea-based conviction, claiming that the plea was not voluntary, and that the trial court had failed to obtain an adequate factual basis for accepting the plea. Defendant also sought to challenge his 1985 UBAL-3 plea-based conviction, claiming that the trial judge in that proceeding failed to obtain an adequate factual basis for accepting defendant's plea and failed to give certain advice regarding the plea. Defendant did not bring a direct appeal of either conviction.

[17] Our grant order limited the issues to

(1) whether a third or subsequent conviction for violating MCL 257.625; MSA 9.2325 may serve as the current felony for purposes of a second-felony habitual offender charge, (2) whether a third or subsequent conviction for violating MCL 257.625; MSA 9.2325 may serve as a prior felony for purposes of a second-felony habitual offender charge, and (3) whether the answer to either of the first two questions depends on whether the same prior misdemeanor conviction for violating MCL 257.625; MSA 9.2325 is used to enhance to felony status both the prior felony and the current felony.

II

It is a crime under the Motor Vehicle Code for any person (1) whose blood contains an unlawful (0.10 percent or more) blood alcohol level, or (2) who is under the influence of intoxicating liquor or a controlled substance, to operate a motor vehicle upon a highway. MCL 257.625(1), (2); MSA 9.2325(1), (2).[18]

Upon a first conviction, the crime is treated as a misdemeanor, and the violator may be imprisoned for not more than ninety days or fined up to $500, or both. Upon a second conviction within a seven-year period, also a misdemeanor, the maximum prison sentence escalates to one year and the fine to $1,000.[19]

However, one who is convicted of OUIL within ten years of two or more prior OUIL convictions, "is guilty of a felony,"[20] punishable under the Motor Vehicle Code by imprisonment for not less than one or more than five years, or by a fine of not less than $500 or more than $5,000, or both.[21]

While the Motor Vehicle Code declares that the third, and each subsequent OUIL offense within a

[18] Since, for purposes of these appeals, there is no reason to distinguish between OUIL and UBAL violations, except where otherwise required, we hereafter will refer to both as OUIL violations.

[19] In addition to possible imprisonment or a fine, as provided, the operator's license of the violator is suspended or restricted in the case of a first offender, and must be revoked in the cases of second and subsequent offenders. See MCL 257.625(4), (5), (6); MSA 9.2325(4), (5), (6).

[20] MCL 257.625(6); MSA 9.2325(6).

[21] MCL 257.902; MSA 9.2602 provides:

Any person who is convicted of a violation of any of the provisions of this act declared to constitute a felony, unless a different penalty is expressly provided herein, shall be punished by imprisonment for not less than 1 year nor more than 5 years, or by a fine of not less than $500.00 nor more than $5,000.00, or by both such fine and imprisonment.

ten-year period, is a felony, the code does not specifically provide for escalation of the maximum punishment for fourth and subsequent OUIL convictions.[22] Because the Motor Vehicle Code contains its own punishment escalation scheme, including the elevation to felony status of third and subsequent OUIL offenses, and because the code specifies a punishment for felony convictions, it is argued by defendants in these appeals that the Legislature did not intend the habitual offender act to apply to OUIL felony convictions.

Against that background, we turn to consider the relationship and applicability of the habitual offender act to OUIL felony offenses.

III

That part of the habitual offender act applicable to second felony offenders provides in pertinent part:

> (1) If a person has been convicted of a felony, . . . and that person commits a subsequent felony within this state, the person *shall* be punished . . . as follows:
>
> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court . . . *may* . . . sentence the person to imprisonment for a maximum term which is not more than 1½ times the longest term prescribed for a first conviction of that offense or for a lesser term.
>
> * * *
>
> (c) If the subsequent felony is a major controlled

---

[22] As amended by 1982 PA 309, § 625(6) no longer mentions "subsequent" OUIL convictions within the body of the text. However, since the statute provides that a person who commits an OUIL offense within 10 years of "2 or more" prior OUIL convictions "is guilty of a felony," the present statute is not limited to the first OUIL offense committed within ten years of two or more such offenses.

substance offense, the person shall be punished as provided by part 74 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.7401 to 333.7415 of the Michigan Compiled Laws. [MCL 769.10; MSA 28.1082, as amended by 1988 PA 90. Emphasis added.]

It is noteworthy that while the habitual offender act provides that the court "shall" punish a second felony offender in accordance with the statute, the Legislature provided that the court "may" sentence such a second offender to a maximum term of up to one and one-half times the maximum term prescribed for a first conviction, "or for a lesser term." Since the language is permissive, not mandatory, it fixes only the *upper boundaries* of the court's sentencing discretion. *People v Coffee,* 151 Mich App 364, 372; 390 NW2d 721 (1986), *People v Voss,* 133 Mich App 73; 348 NW2d 37 (1984). As Justice LEVIN observed in *People v Hendrick,* 398 Mich 410, 424; 247 NW2d 840 (1976), "the judge [is not] obliged, if the accused is convicted as an habitual offender, to impose enhanced punishment."

We note also that these appeals do not challenge the validity of the statutes in question.[23] The constitutionality of the habitual offender act has been upheld in a series of decisions, beginning with *People v Palm,* 245 Mich 396; 223 NW 67 (1929). See also *In re Pardee,* 327 Mich 13; 41 NW2d 466 (1950) (double jeopardy); *People v Birmingham,* 13 Mich App 402; 164 NW2d 561 (1968) (due process and equal protection); *People v Potts,* 55 Mich App 622; 223 NW2d 96 (1974) (cruel and unusual punishment).

---

[23] It might be said that the argument of defendant Johnson which is addressed in part IV implicates the Double Jeopardy Clause. US Const, Am V. However, as our discussion there indicates, resolution in this case turns upon a determination of legislative intent and the construction of a statute.

Recently, the legislative history of the habitual offender statute was extensively examined by this Court in *People v Preuss,* 436 Mich 714; 461 NW2d 703 (1990). Therein, Justice CAVANAGH explained that the language used in the current statute closely parallels wording in a 1927 enactment, which was the outgrowth of work by a Commission of Inquiry Into Criminal Procedure. In response to the commission's recommendations, the Legislature enacted 1927 PA 175, which revised an earlier version of the habitual offender act, § 15613 of the Compiled Laws of 1915, referred to in the commission's report as " 'one of the oldest criminal enactments of this State . . . .' " *Id.,* p 722.

As noted in *Preuss,* "[t]he commission's report reflects the goal of punishing repeat offenders harshly" and the overall purpose of making it "tougher for criminals to avoid apprehension, conviction, and adequate punishment . . . ." *Id.,* p 724. Since the Legislature adopted the commission's proposals without change, the *Preuss* Court reasoned that the Legislature shared the views of the commission. *Id.,* p 725.

Further, this Court has repeatedly stated that, by enacting the habitual offender act, " 'the legislature did not intend to make a separate substantive crime out of being an habitual criminal but rather, for deterrent purposes, intended to augment the punishment for second or subsequent felonies.' " *People v Shotwell,* 352 Mich 42, 46; 88 NW2d 313 (1958), as quoted in *People v Hendrick, supra* at 416-417. We said in *Palm, supra,* p 401, that " 'in determining the amount or nature of the penalty to be inflicted, the legislature may require the courts to take into consideration the persistence of the defendant in his criminal course.' " To that end, the habitual offender act "provides a procedure after conviction for the determination of

a fact which the court is required to consider in imposing sentence." *People v Judge of Recorder's Court,* 251 Mich 626, 627; 232 NW 402 (1930).

While the habitual offender act, which is found in the Code of Criminal Procedure, establishes a procedure for enhancing a sentence, it is clear that the OUIL provisions of the Motor Vehicle Code establish crimes. Because OUIL-3 is a separate crime, the prosecutor must prove all elements of the offense, including the prior convictions. *People v Raisanen,* 114 Mich App 840, 846; 319 NW2d 693 (1982).

In determining whether the Legislature intended to allow sentence enhancement of OUIL felonies through application of the habitual offender statute, we are guided, of course, by the rules of statutory construction. It is fundamental that an unambiguous statute is to be given effect, although departure may be justified when a literal construction " 'would produce an absurd and unjust result and would be clearly inconsistent with the purposes and the policies of the act in question.' " *Gobler v Auto-Owners Ins Co,* 428 Mich 51, 62; 404 NW2d 199 (1987), quoting *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976). Statutes which may appear to conflict are to be read together and reconciled, if possible. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 65; 214 NW2d 803 (1974); *People v Buckley,* 302 Mich 12, 22; 4 NW2d 448 (1942). However, where two statutes actually conflict, both cannot stand as the law. *Winter v Royal Oak City Manager,* 317 Mich 259, 265; 26 NW2d 893 (1947); *Bd of Ed v Blondell,* 251 Mich 528, 531; 232 NW 375 (1930).

In the habitual offender act, the Legislature has directed that when an individual commits "a *subsequent felony* within this state, the person *shall*

be punished" in accordance with the act's provisions. The language is clear and unambiguous; it makes no exceptions with respect to OUIL felony convictions. *People v Shotwell, supra,* p 46.[24]

In the Court of Appeals, the *Bewersdorf* majority, relying on *People v Tucker, supra,* ruled that the habitual offender act may not be used to enhance defendant's sentence for OUIL-3. Although the panel in *Tucker* conceded that an application of the plain meaning of the habitual offender act would mean that "enhancement is clearly available . . . since the habitual offender statute clearly applies to all felonies," 177 Mich App 179, it nevertheless chose to analyze the OUIL statute and habitual offender act so as to place them in conflict. Finding that the two enactments "appear" to conflict, *id.,* the panel ruled that the OUIL sentencing provisions controlled over the more general sentence enhancement provisions in the habitual offender act.

We reject the *Tucker* panel's forced construction that placed the two statutes in conflict. We prefer a course which, in the words of the dissenting *Bewersdorf* Court of Appeals judge, enables the two acts to "dovetail harmoniously."[25]

We read the two statutes so as to give effect to

[24] In *Shotwell,* this Court held that the habitual offender act was applicable to a felony conviction for prison escape, even though the escape statute, at that time, provided for a maximum three-year sentence to be added to the original sentence. MCL 750.193; MSA 28.390. This Court specifically rejected defendant's argument that because all escapes are committed by felons, and because the Legislature provided for a maximum term for an escape offense, it must have intended that the habitual offender act would not apply. We said that, "[s]ince the legislature did not except escaping prison from our second offender statute we can only infer that it intended the latter statute to apply to all felonies." *Id.* at 46.

[25] 181 Mich App 437. The Court of Appeals in *People v Honeycutt,* 163 Mich App 757; 415 NW2d 12 (1987), declined to apply the habitual offender act to felony-firearm convictions, MCL 750.227b; MSA 28.424(2). Cf. *People v Edmonds,* 93 Mich App 129; 285 NW2d 802 (1979). Without necessarily intimating approval of that decision,

both. We find that the Legislature intended that the sentence for an OUIL-3 felony, if it is a first felony conviction, shall be as provided in the Motor Vehicle Code: imprisonment for not less than one or more than five years, and a fine of not less than $500 or more than $5,000, or both. However, any subsequent OUIL felony conviction is subject to the repeat offender provisions of the habitual offender act regardless of whether the underlying felony conviction is also an OUIL-3 offense. We believe this is the plain meaning of the two statutes when read together, and that such a construction is consistent with the legislative purpose to deter repeated criminal acts by providing escalating punishment.[26]

---

we note that the felony-firearm statute, unlike the OUIL statute, provides for escalating punishment once the offense is considered a felony. A first felony-firearm offense is punishable by two years imprisonment; a second is punishable by five years imprisonment; a third or subsequent conviction is punishable by ten years imprisonment. MCL 750.227b; MSA 28.424(2).

In ruling that the habitual offender act is to be applied to a conviction for first-degree retail fraud even though the retail fraud statute, MCL 750.356c(2); MSA 28.588(3)(2), elevates retail fraud from second to first degree if defendant has a prior conviction for larceny, the Court of Appeals in *People v Eilola*, 179 Mich App 315, 323; 445 NW2d 490 (1989), convincingly distinguished *Honeycutt, supra*:

> Unlike the felony-firearm statute . . . where application of both the enhancement provisions contained within [it] as well as the general habitual-offender statute would produce ever escalating and conflicting results, the general habitual-offender statute dovetails harmoniously with the retail-fraud statute. That is, the internal provisions of the retail-fraud statute can raise an offense from a misdemeanor to a felony, but do not enhance the sentence once a defendant is at the level of a felony offense. At this point, the general habitual-offender statute can be applied where the offender has prior felony convictions.

[26] We believe this construction is reinforced by *People v Smith*, 423 Mich 427; 378 NW2d 384 (1985), wherein this Court read the habitual offender act broadly to apply to "high misdemeanors." We concluded there that, although an offense is referred to as a "misdemeanor" in the statute making it a crime, it is nevertheless to be treated as a

It is significant that, in crafting the OUIL provisions of the Motor Vehicle Code, the Legislature established escalating punishment for only the first and second OUIL violations, both misdemeanors, and then chose merely to provide that a third and any subsequent conviction shall be a felony. Surely, it is reasonable to assume that when the Legislature drafted the OUIL provisions it was aware, and at all times since then has been aware, of the habitual offender act and its direction that any person who commits a second or subsequent felony within this state shall be punished in accordance with its terms. If we were to adopt the construction urged upon us by defendant, it would produce the absurd result of assuring recidivist drunk drivers that there could be no increase in punishment for convictions after the third OUIL violation.

Our conclusion that the Legislature intended that the habitual offender act apply to OUIL felonies, even though the underlying felony is itself an OUIL offense, is supported by 1978 PA 77,[27] which amended the habitual offender statute to exempt from its application certain major controlled substance offenses controlled by other provisions of law.[28] See *People v Elmore,* 94 Mich App 304, 306,

___

felony for purposes of the habitual offender act where it is punishable by imprisonment for two years.

[27] The amendment inserted the following clause into the habitual offender statute:

> If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by Act No. 196 of the Public Acts of 1971, as amended. [MCL 769.11(1)(c); MSA 28.1083(1)(c).]

1971 PA 196 is the Controlled Substances Act, MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.*, which, as amended by 1988 PA 144, contains a modified sentence enhancement provision. See MCL 333.7413; MSA 14.15(7413).

[28] MCL 769.10(1)(c); MSA 28.1082(1)(c).

n 1; 288 NW2d 416 (1979), and *People v Staples,*
100 Mich App 19, 23; 299 NW2d 1 (1980).

Obviously, the Legislature has demonstrated
that when it intends to do so, it is capable of
excluding a particular category of felonies from
the sentence enhancement provisions of the habit-
ual offender act. That the Legislature has not seen
fit to write in a similar exception for OUIL convic-
tions, although it has had numerous opportunities
to do so, provides reinforcement, we believe, for
our finding that the Legislature intended the ha-
bitual offender statute to apply to OUIL felonies.

IV

We turn now to consider defendant Johnson's
argument that his 1981 misdemeanor OUIL convic-
tion cannot be used to elevate to felony status both
his 1985 UBAL conviction and the current OUIL-3
charge.[29] Defendant claims that permitting his
1981 conviction to be used in such a manner
amounts to "double enhancement" and places him
in "multiple jeopardy."

The Double Jeopardy Clause of the United
States Constitution,[30] as well as the similar provi-
sion in the Michigan Constitution,[31] protect against
successive prosecutions for the same offense, and
against multiple punishment for the same offense.
*People v Sturgis,* 427 Mich 392, 400; 397 NW2d
783 (1986). As explained in *People v Wakeford,* 418
Mich 95; 341 NW2d 68 (1983), the second protec-

[29] Defendant's 1978 and 1981 misdemeanor convictions served as
the underlying OUIL convictions for purposes of his 1985 UBAL-3 felony
conviction. The 1981 conviction again served, along with his 1985
conviction, to enhance the current OUIL offense to OUIL-3.

[30] US Const, Am V, provides in relevant part: "[N]or shall any
person be subject for the same offence to be twice put in jeopardy of
life or limb . . . ."

[31] Const 1963, art 1, § 15, provides in relevant part: "No person
shall be subject for the same offense to be twice put in jeopardy."

tion against multiple punishment is "a limitation on the prosecutor and the courts, not the Legislature." *Id.* at 108. It is well settled that a claimed violation of the constitutional protection against double jeopardy based on multiple-punishment grounds "is appropriately resolved by ascertaining and enforcing the intent of the Legislature." *Id.* at 105-106. See also *People v Robideau,* 419 Mich 458, 469; 355 NW2d 592 (1984). While complaining of "multiple jeopardy," defendant Johnson cites *Wakeford* and states in his brief that the issue raised is one "of legislative intent and not of constitutional import."

The language of the statute is the best source for determining legislative intent. *Kalamazoo Ed Ass'n v Kalamazoo Schools,* 406 Mich 579; 281 NW2d 454 (1979); *Espinoza v Bowerman-Halifax Funeral Home,* 121 Mich App 432; 328 NW2d 657 (1982); *People v Dunn,* 104 Mich App 419; 304 NW2d 856 (1981). We find nothing in the language of the OUIL statute to indicate that the Legislature intended that a single misdemeanor OUIL conviction could be used *only* to enhance to felony status *one* subsequent OUIL offense; instead, the statute provides that a person who commits an OUIL offense within ten years of two "or more" prior OUIL convictions "is guilty of a felony." MCL 257.625(6); MSA 9.2325(6). We believe that use of the words "or more" make clear that a fourth, fifth, etc., OUIL offense, as well as a third offense, is a felony if all are committed within a ten-year period. We find it apparent that by using the words "or more" in this context the Legislature intended that first and second OUIL misdemeanor convictions are to be counted in elevating a third OUIL offense to felony status, and that the three convictions are to be counted again if the violator commits a fourth OUIL offense within a ten-year period.

Because his 1981 misdemeanor conviction had been counted once to elevate his 1985 conviction to felony status, defendant argues that the same 1981 conviction should not be counted again in determining the felony status of his current OUIL-3 charge. As we understand the construction urged upon us by defendant, it would permit only a third, sixth, ninth, twelfth, etc., OUIL conviction to be treated as a felony. We do not believe the Legislature intended such a result.

In light of our earlier analysis, and after considering again the purpose and wording of both the OUIL provisions and the habitual offender act, we conclude that the "double enhancement" of which defendant complains was intended by the Legislature. Moreover, we are convinced that such a construction gives effect to the Legislature's purpose, i.e., to authorize punishment on an escalating basis and to remove from the roads recidivist drunken drivers who pose a serious danger to the lives of many others.

V

Accordingly, we affirm in part[32] and reverse in part the decision of the Court of Appeals in *People v Bewersdorf.* In *People v Johnson,* we affirm the decision of the Court of Appeals and remand the

[32] Because defendant Bewersdorf was adequately advised by the trial court of his right to have witnesses against him appear at trial, we affirm the panel's ruling that defendant was not entitled to withdraw his plea. See MCR 6.302(B)(3)(e). The trial judge asked defendant if he understood that he had "the right to cross-examine the witnesses against [him]," and defendant answered affirmatively. See *Guilty Plea Cases,* 395 Mich 96, 124; 235 NW2d 132 (1975).

Defendant also argued below that the trial court erred by imposing sentence without first requiring that defendant be screened and assessed to determine whether he would benefit from rehabilitative services. See MCL 257.625(8); MSA 9.2325(8). Since defendant has completed his sentence, having been released on December 23, 1986, we consider that the issue is moot and need not be addressed.

case to the circuit court for proceedings consistent with this opinion.

BRICKLEY, BOYLE, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I agree with the general analysis of the Court, and with the result the Court reaches in *People v Bewersdorf.* With regard to the result in *People v Johnson,* however, I respectfully dissent. It is clear, from our perspective at this stage of the litigation, that defendant Johnson simply has no valid prior felony conviction. The prior felony conviction on which the Court of Appeals relied in reinstating Johnson's habitual felony offender charge is the 1985 UBAL-3 conviction. That conviction was itself elevated to felony status on the basis of Johnson's 1978 and 1981 misdemeanor convictions. The circuit court upheld the validity of the 1981 conviction, and the Court of Appeals affirmed that ruling. The circuit court found the 1978 conviction procedurally invalid, however, and the people declined to appeal that ruling.[1] It is thus conceded, for purposes of our decision, that the 1978 conviction is invalid. One of the two supporting legs of the felony status of the 1985 conviction has therefore been knocked out. While the 1985 conviction remains valid as a prior misdemeanor, it is now clear that it should never have been elevated to felony status.

At the outset, I think it clear that Johnson's collateral challenge to the felony status of the 1985 conviction is perfectly cognizable under the principles of *Baldasar v Illinois,* 446 US 222; 100 S

[1] The circuit court also found procedurally invalid the 1985 conviction itself. The Court of Appeals, however, reversed. The Court of Appeals did not address the validity of the felony status of the 1985 conviction. See n 4.

Ct 1585; 64 L Ed 2d 169 (1980), and *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983).[2] While the challenge might, in a certain sense, be described as "twice-removed," since Johnson is indirectly challenging the validity of the 1978 conviction by way of its effect on the felony status of the 1985 conviction, I do not believe this has any bearing on the relevant controlling principles.[3] The people have not contested the propriety of Johnson's collateral challenge to the 1978 conviction as such; indeed, his challenge succeeded on the merits in that regard, and the people have acquiesced in that result. Nor have the people contested the propriety (as opposed to the merits) of Johnson's challenges to the 1981 conviction as such and to the inherent procedural validity (even as a misdemeanor) of the 1985 conviction, although Johnson has not, of course, prevailed on the merits with regard to the latter two challenges.

Given all this, it would seem odd if Johnson were deemed legally incapable of challenging the improper effect of the invalid 1978 conviction on the felony status (as opposed to the inherent pro-

[2] Johnson's challenge is certainly timely in the sense required by *Crawford*—that is, that it "must be made before a defendant's plea of guilty or nolo contendere is accepted." *Id.* at 613-614. This case is on interlocutory appeal and has not yet resulted in a guilty plea or conviction. Johnson's failure to raise the validity of the 1978 conviction before the 1985 conviction became final, or to appeal the 1985 conviction on that basis, does, of course, preclude him from challenging the 1985 conviction in its own right on that basis. But Johnson is not challenging the 1985 conviction *itself* in this case; rather, he is challenging the *use* of the 1985 conviction to subject him to habitual felony offender liability in this case. As we noted in *Crawford,* "the question here is not whether the conviction is subject to collateral attack as an alternative to direct appeal, . . . but whether the defective conviction may be used in supplemental proceedings when the repercussions to the defendant of his failure to appeal may yet be felt." *Id.* at 614, n 14.

[3] Any collateral challenge is already, by its very nature, "once-removed."

cedural validity) of the 1985 conviction. Such a
challenge is no more temporally remote and no
less judicially manageable than any routine collat-
eral challenge. Most important, permitting such a
challenge serves the very same interests of funda-
mental justice served by collateral challenges in
general.

The Court does not address this issue; rather, it
simply notes the limited scope of our grant of
leave to appeal in this case, which did not encom-
pass "[Johnson's] collateral attacks on his prior
convictions." *Ante,* p 63; see also 435 Mich 880
(1990) (order granting leave to appeal in *Johnson*).[4]
This is understandable, and I cannot fault the
Court for its strict adherence to our grant order. I
note, however, that we "may, at any time, in
addition to [our] general powers: . . . permit the
reasons or grounds of appeal to be amended or
new grounds to be added . . . ." MCR 7.316(A)(3).
I would exercise this power in this case, for at
least two reasons. First, as the foregoing discussion
illustrates, Johnson's claim involves rather convo-
luted historical and procedural complexities, and
the nature and merits of the claim were not fully
apparent to me when the limited grant order was
entered. Second, and most important, it would be a
grave injustice to this particular defendant to
subject him to habitual felony offender liability
when, in fact, he has no valid prior felony. John-

---

[4] While Johnson raised the collateral challenge under discussion in
his application for leave to appeal to this Court, the Court of Appeals
did not address the challenge, apparently because Johnson did not
raise it at that level in response to the people's appeal. This default (if
such it was) is excusable in my view because, while Johnson cross
appealed the circuit court's judgment upholding the validity of the
1981 conviction, the circuit court's suppression of both the 1978 and
1985 convictions as procedurally invalid rendered moot any issue
regarding the effect of the 1978 conviction on the felony status of the
1985 conviction. Johnson evidently did not anticipate that the Court
of Appeals might ultimately uphold the procedural validity of both
the 1981 and 1985 convictions.

son's claim is substantively meritorious, and this may, realistically speaking, be his last chance for relief.

For the foregoing reasons, I would reverse the judgment of the Court of Appeals in *People v Johnson* insofar as it reinstates the habitual felony offender charge.[5]

LEVIN, J., concurred with CAVANAGH, C.J.

LEVIN, J. (*dissenting*). The Motor Vehicle Code was amended in 1958 to provide that on a third or subsequent conviction within a period of ten years for driving under the influence of intoxicating liquor, the offender shall be guilty of a felony, punishable by a sentence of not more than five years.[1]

Before the 1958 amendment, the Motor Vehicle Code provided that "[o]n a second or subsequent conviction," including, therefore, a third, fourth, or still another conviction, of driving under the influence of intoxicating liquor, the offender was guilty of a misdemeanor punishable by imprisonment for not more than one year.[2]

The majority states, "it is reasonable to assume that when [in 1958] the Legislature drafted the

---

[5] I agree that the Court of Appeals judgment should be affirmed insofar as it reinstates the OUIL-3 felony charge.

[1] 1958 PA 113, amending MCL 257.625; MSA 9.2325. The language was rewritten by 1982 PA 309 to provide that a person who violates the prohibition against drunk driving within ten years of "2 or more prior convictions" is guilty of a felony.

As originally enacted in 1949, the Motor Vehicle Code provided that unless a different penalty is expressly provided, a person convicted of a felony shall be punished by imprisonment for not less than 1 year nor more than 5 years, or by a fine of not less than $500 nor more than $5,000, or by both such fine and imprisonment. 1949 PA 300, MCL 257.902; MSA 9.2602.

[2] 1956 PA 34 reflected the last amendment of § 625 before enactment of 1958 PA 113. It was, and continues to be, provided that in the discretion of the court, a fine of not more than $1,000 could be imposed.

OUIL[-3] provisions it was aware, and at all times since then has been aware, of the habitual offender act . . . ."[3] If so, the Legislature was more conversant with the law than prosecutors, who seem to have been unaware, during the first twenty-five years or so after the 1958 amendment, providing that an OUIL-3 offender is deemed to be guilty of a felony, that OUIL-3 could be charged as an habitual offense under the Code of Criminal Procedure.

It appears that the first effort by a prosecutor to further escalate the penalty for OUIL-3 is reflected in *People v Tucker,* 177 Mich App 174; 441 NW2d 59 (1989). The Court of Appeals there held that the habitual offender provisions of the Code of Criminal Procedure[4] could *not* be invoked to further enhance the penalty for OUIL-3. I agree with that conclusion, and dissent from today's decision.

Tucker had pled guilty to OUIL-3[5] and to being an habitual offender, fourth offense.[6] "The prior felonies were procurement of a controlled substance and two convictions for larceny in a building."[7]

Before *Tucker* was decided, this Court had ruled that a person who had stolen a shirt, slacks, or pants from a department store valued at under $100[8] could be charged with having committed either the felony of larceny in a building, or the misdemeanor of larceny under $100, as the prosecutor determined in the exercise of discretion.[9] *People v Ford,* 417 Mich 66; 331 NW2d 878 (1982).

[3] *Ante,* p 71.

[4] Code of Criminal Procedure, 1927 PA 175, MCL 769.10-769.13; MSA 28.1082-28.1085.

[5] MCL 257.625(6); MSA 9.2325(6).

[6] MCL 769.12; MSA 28.1084.

[7] *People v Tucker,* p 176.

[8] MCL 750.360; MSA 28.592.

[9] MCL 750.356; MSA 28.588.

Last year this Court ruled that a person could be convicted as a four-time habitual offender if the fourth offense was preceded by three felony convictions arising from separate criminal incidents. *People v Preuss,* 436 Mich 714, 717; 461 NW2d 703 (1990).

Those decisions, in combination with today's decision, mean that if a person has been thrice convicted of larcenies in buildings arising out of separate shoplifting offenses, then, upon conviction of OUIL-3, the court would be empowered to sentence him to life in prison as if he had been convicted of a capital offense.

The majority recognizes that a departure from the literal meaning of statutes may be justified when a literal construction " 'would produce an absurd and unjust result and would be clearly inconsistent with the purposes and the policies of the act in question.' "[10] This is a case where a departure from a literal construction is justified to avoid producing an absurd and unjust result, and where a literal construction would not be consistent with the purpose and policy of the drunk-driving provision of the Motor Vehicle Code.

The purpose and policy of the drunk-driving provision is to punish drunk drivers. Neither Tucker nor Bewersdorf, by reason of their prior records of conviction for felonies other than drunk driving, represented greater menaces to users of the highway than other persons convicted of OUIL-3 for the first time. Johnson did, indeed, have three prior drunk-driving convictions and, there being no OUIL-4, could only be charged with OUIL-3. The majority argues that not to permit a prosecutor to charge as an habitual offender a person with four

---

[10] *Gobler v Auto-Owners Ins Co,* 428 Mich 51, 62; 404 NW2d 199 (1987), quoting *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976).

drunk-driving convictions during the ten-year period "would produce the absurd result of assuring recidivist drunk drivers that there could be no increase in punishment for convictions after the third OUIL violation."[11]

It is debatable which result is more absurd, subjecting a person convicted of OUIL-3 to life imprisonment because he has been convicted three times of larceny in a building for separate incidents of shoplifting, or limiting the sentence that may be imposed on a second conviction of OUIL-3 to a maximum sentence of five years in prison rather than empowering the judge to impose a maximum sentence of 7½ years, as may be done under today's decision if the offender is convicted of OUIL-3 charged as a second habitual offense,[12] or ten years if charged and convicted as a third habitual offense,[13] or life or a lesser term if charged and convicted as a fourth habitual offense.[14]

For over twenty-five years, prosecutors throughout the state, aware that the maximum penalty for a second or subsequent OUIL-3 offense was five years, apparently thought it was beyond the policy of the Motor Vehicle Code to seek to enhance the penalty for OUIL-3 under the habitual offender provisions of the Code of Criminal Procedure.[15]

As the majority observes, a sentencing judge is

---

[11] *Ante,* p 71.

[12] MCL 769.10; MSA 28.1082.

[13] MCL 769.11; MSA 28.1083.

[14] MCL 769.12; MSA 28.1084.

[15] The majority writes that its construction is supported by 1978 PA 77, which amended the habitual offender provisions to except from their application certain major controlled substance offenses governed by other provisions of law. The majority concludes that the Legislature has demonstrated thereby that it is capable of excluding a particular category of felonies from sentencing enhancement under the habitual offender provisions. The majority further reasons that the Legislature's failure to enact a similar exception for an OUIL-3 conviction reinforces its conclusion that the Legislature intended the habitual offender act to apply to OUIL-3 felonies.

not obliged to impose the maximum punishment permissible under the habitual offender provisions of the Code of Criminal Procedure. Bewersdorf was sentenced to one year in the county jail when he was convicted of OUIL-3, charged as a second habitual offense, even though he could have been sentenced to a maximum of 7½ years, one and one-half times the five-year maximum sentence for the predicate OUIL-3.[16]

The sentence imposed on Bewersdorf may be typical in that the maximum sentence actually imposed for a first or possibly even a second OUIL-3 conviction will generally not be greater than might be imposed on a first conviction of OUIL-3 not charged as an habitual offense. The prosecutor, nevertheless, seeks the authority to charge OUIL-3 offenders as habitual offenders when they have a record of prior felony conviction, without regard to whether the prior felony is for OUIL-3 or is unrelated to drunk driving, and thereby to provide the judge with greater sentencing power. It is the threat of the exercise of such enlarged sentencing power that makes unjust the literal construction adopted by the majority.

A person charged with OUIL-3 as an habitual offense may, depending on the perceived sentencing climate in the court where he is charged, be constrained to plead guilty and thereby relieve the prosecutor of the burden and risk of proving the

The 1978 amendment was enacted to prevent a bypassing of the mandatory minimum sentences for major controlled substances that might result, were a predicate major substance offense charged as an habitual offense, because imposition of a greater sentence is not mandatory under the habitual offender provisions.

The argument that the Legislature has not seen fit to enact a similar exception for an OUIL-3 conviction ignores that, until a year or so before *People v Tucker* was decided in 1989, it had not been suggested in any reported decision that the act might be read as the Court reads it today.

[16] MCL 769.11; MSA 28.1083.

OUIL-3 charge, and the judge of the time commitment involved, lest substantially greater punishment be imposed for having exercised the right to stand trial. Today's decision, thus, will assist prosecutors in obtaining pleas of guilty and help move the docket. Assisting the prosecutor in plea bargaining and the court in moving the docket are not purposes or policies of the drunk-driving provisions of the Motor Vehicle Code or of the Code of Criminal Procedure.

Today's decision would be less troubling if this Court had empowered, or were to empower and encourage, the appellate judiciary to rectify abuse in the exercise of charging or sentencing discretion.